[No. 23.   Decided February 13, 1890.]

R. A. McNAIR, *Marshal and Tax Collector of the City of Olympia, v.* N. OSTRANDER and ELIZABETH OSTRANDER.

MUNICIPAL CORPORATIONS — ASSESSMENTS FOR STREET IMPROVEMENTS — CONSTRUCTION OF CHARTER.

The act incorporating the city of Olympia gives the city power in § 8, " to construct and repair sidewalks, and to curb, pave, grade, gravel and gutter any street, and to levy and collect a special tax or assessment on the lots and parcels of land fronting on such street, sufficient to pay the expense of construction of said sidewalks, and graveling or paving said streets," and further provides

that " unless the owners of more than one-half the property subject to assessment for such improvement petition the council to make the same, such improvement shall not be made until two-thirds of all the members of the council, by vote, authorize the making of the same;" and § 96 provides for an assessment of lots and an apportionment of the whole cost of "planking" or "graveling," *pro rata;* § 93 provides that whenever the city council deems it expedient to "establish or order the grade of any street or alley of the city, or to make any improvement thereof, as authorized by §§ 5, 6, 7, 8, 9 and 10 of this act," it shall cause a survey, diagram and estimate of the cost thereof to be made and filed "for the inspection of the persons interested therein;" § 94 provides that under certain circumstances the council is authorized to proceed and "make the improvement;" and other sections speak of the "cost of improvements," and require the council to provide, by ordinance, for its payment as apportioned. *Held,* that all the sections of the charter upon the subject of street improvements must be construed together, and that authority is thereby conferred upon the city of Olympia to levy special assessments to pay for grading streets, as well as for graveling and paving them.

*Appeal from District Court, Thurston County.*

The facts are stated fully in the opinion.

*Charles H. Ayer,* City Attorney, for appellant.

"The meaning of a law is ascertained from its words. Where these are obscure, regard is to be had to its (1) context, (2) subject-matter, (3) effect and consequences, (4) reason and spirit." Robinson's Elementary Law (1st ed.), p. 2; Blackstone, Com. (Cooley's 3d ed.), vol. 1, p. 59.

The meaning intended to be conveyed by the words used in §§ 7, 8, 96, *et seq.,* of the charter of the city of Olympia being obscure, it will be necessary to apply the lights thus provided. Under the head of context we have the rule that effect and force must be given to each part of the statute if possible. 14 B. Mon. 266; *Cannon v. Vaughn,* 12 Tex. 399; *San Francisco v. Hagen,* 5 Cal. 169.

The power to pave and gravel at the expense of the property owners carries with it the power to grade at their expense, that being necessary or incidental to graveling or

paving. 2 Dill. Mun. Corp. (3d ed.), p. 794, and cases cited; *McNamara v. Estes,* 22 Iowa, 246.

*J. W. Robinson,* for appellees.

The powers of the city must be measured by its charter, and having been given authority to levy a special tax or assessment for certain improvements, naming them, and making such assessments a lien against the abutting property therefor, it is a limitation on the city's power and prohibits the levying of special taxes or assessments on abutting property for any other improvement not therein named. Charter of Olympia, chap. 2, and chap. 8, p. 20; Dill. Mun. Corp. (3d ed.), §§ 50, 391, 763-5, 769, 770, 782 and 606; Cooley, Const. Lim. (5th ed.), §§ 192, 194, 195 and 203; Desty, Taxation, vol. 2, p. 1241; *Navigation Co. v. Portland,* 2 Or. 81; *Trustees v. Osborn,* 9 Ind. 459; *Fairfield v. Ratcliff,* 20 Iowa, 396; *Douglass v. Placerville,* 18 Cal. 643; *Taylor v. Donner,* 31 Cal. 480; *Buckwell v. Story,* 36 Cal. 67; *Wilson v. Chilcott,* 21 Pac. Rep. 901; *Wright v. Chicago,* 20 Ill. 252; *Jeffries v. Lawrence,* 42 Iowa, 489; *In re* M. E. Church, 66 N. Y. 395; *Vance v. City of Little Rock,* 30 Ark. 435; *Allen v. City of Galveston,* 51 Tex. 302.

The power to make improvements does not carry with it the power to levy special assessments upon the property benefited to pay for the improvements. Assessments exercise different powers from that of taxes; it cannot be exercised as an independent power, but only as incidental. *Wright v. Chicago,* 20 Ill. 252; *City of Fairfield v. Ratcliff,* 20 Iowa, 396; *Annapolis v. Maryland,* 32 Md. 471; *Taylor v. Palmer,* 31 Cal. 240.

The opinion of the court was delivered by

STILES, J.—The appellant was tax collector of the city of Olympia, in the county of Thurston, and this action was brought to restrain him from selling a block of land fronting on Adams street for the amount of a special tax levied

upon the block by the city authorities for the expense of grading the street. The complaint alleged certain acts of the common council, preceding and leading up to the levy and threatened sales, against the regularity of which no complaint was made. The ground of the action was, that under the act of the legislature approved November 28, 1883, incorporating the city of Olympia, no authority was given to the municipal corporation to levy special taxes for grading streets upon abutting property. A demurrer was interposed by the collector, but it was overruled by the court below, and upon his declining to plead further, judgment finally restraining him was entered. By this appeal we are asked to review the judgment and say whether or not the contested power exists.

It would naturally be expected that a legislative act which purported to confer upon a municipal corporation, created by its own terms, any power to levy special taxes for the improvement of streets would clearly cover the matter of grading, which must be the beginning of all street improvement. But in the act before us the genius of legislation seems to have been invoked to aid confusion and uncertainty rather than order and precision. Section 7 provides generally that the city "shall have power to provide for clearing, opening, grading, graveling, improving and repairing streets," etc., which clearly goes no further than that the city may, out of its own treasury, procured from general taxation, do those things at the pleasure of its mayor and council. Section 8 gives the city power "to construct and repair sidewalks, and to curb, pave, grade, gravel and gutter any street, . . . and to levy and collect a special tax or assessment on the lots and parcels of land fronting on such street, . . . sufficient to pay the expense of construction of *said sidewalks* and *graveling* or *paving* said streets," etc. Further along, after providing for assessment districts, the section reads: "But unless the owners of more than one-half the

8 — 1 WASH.

property subject to assessment for such improvement peti-
tion the council to make the same, *such improvement* shall
not be made until two-thirds of all the members of the
council by vote authorize the making of the same."

Appellee maintains (and it was apparently so held by
the district court) that the provision here made for the
levy of special taxes must be taken to apply strictly to the
particular kinds of improvement named in that connection,
viz., "construction of sidewalks, and graveling or paving
streets," to the exclusion of repairing sidewalks, and curb-
ing, grading and guttering streets. This view is claimed
to be further strengthened by reference to § 96, providing
for the details of special assessments, where it is enacted
that in all cases when the council shall order the "improve-
ment of any street or alley *by the construction of sidewalks
or graveling said streets*," etc., there shall be certain pro-
ceedings designated and leading to the levy of a special
assessment therefor. On the other hand, § 93, which is the
first of the sections providing specifically for the manner
of levying these special taxes (chapter 8), enacts that
whenever the city council deems it expedient " to establish
or order the grade of any street or alley of the city, or to
*make any improvement thereof*, as authorized by §§ 5, 6,
7, 8, 9 and 10 of this act," it shall cause a survey, diagram
and estimate of the cost thereof to be made, and filed with
the city clerk " for the inspection of the persons interested
therein;" and by § 94, if two-thirds in number of the per-
sons owning property on the street, and representing one-
half of the property thereof, do not remonstrate within ten
days, the council is authorized to proceed and "make the
improvement." Section 96 provides for an assessment of
lots and an apportionment of the whole cost of "*planking*"
or "*graveling*," *pro rata*, although no previous mention
has been made in the entire act of any "planking" what-
ever. Section 99, however, returns to the general term
and speaks merely of the "cost of improvements," and

requires the council to provide, by ordinance, for its payment as apportioned; so, also, do §§ 106, 107, 108 and 109. It is the duty of this court to give to the statute that force which its provisions on the subject of street improvements will fairly sustain, although in all its expressions it may not be entirely clear.

Counsel for the appellee has presented us with numerous authorities to the effect that the power to levy special assessments must be plainly and explicitly given, or it cannot be exercised; and to them we yield ready assent. But here the *power* to levy is most explicitly given; and the question to be answered is, whether the language used in §§ 8 and 96 is to be construed by itself, or with reference to that of other sections of the act upon the same subject. In § 8 the provision with regard to sidewalks is, first, to "construct and repair," and secondly, "construction." These terms are synonymous. *Gurnee v. Chicago*, 40 Ill. 165; *People v. Brooklyn*, 21 Barb. 484. With regard to streets and alleys the power is to "curb, pave, grade, gravel and gutter;" while the special assessment mentioned is for "graveling or paving." The last clause of the section, which seems to qualify all that precedes it, gives to owners of abutting property the right to petition for such "improvement," and requires a two-thirds vote of the council to order it, in the absence of such petition. There would seem to be no propriety in this rule as to anything but the construction of sidewalks and the graveling of streets, if the appellee's construction of the section were the correct one. Again, do the terms "graveling" and "paving" fairly include the other things, "curb," "grade" and "gutter"? We think they do; and this view is sustained by authority. Dillon on Municipal Corporations (3d ed.), § 797, says: "The power to pave streets includes the power to furnish and do all that is necessary, usual or fit for paving;" and on this ground it has been held that the expense of grading a street preparatory to

paving, is incident to paving, and the expense properly included in the assessment. *Williams v. Detroit*, 2 Mich. 560. In Illinois the power to *pave* is held to include the power to grade streets. *Burnham v. Chicago*, 24 Ill. 496. The power to *pave* was held to include the power to *curb* with stones. *Schenley v. Commonwealth*, 36 Pa. St. 29. And so, also, the power to macadamize was held to include trimming and guttering. *McNamara v. Estes*, 22 Iowa, 246. The definition of the term "pavement" was thus stated in *Burnham v. Chicago:* "A pavement is not limited to uniformly arranged masses of solid material, as blocks of wood, brick or stone, but it may be as well formed of pebbles, or gravel, or other hard substance, which will make a compact, even, hard way or floor." In criticism of this definition it may be said that paving is the generic term, under which "graveling" is the specific; and that while the generic includes the specific, as the greater the less, the reverse does not follow; but the use of exact terms in this act is so entirely disregarded that we must have recourse to a telescopic rather than a microscopic view of it, and we therefore hold that to the average reader of all the sections upon the subject of street improvements, it must appear that the intention of the legislature was to permit the city of Olympia to "improve" its streets, in any of the particulars named in ¿ 8, with money derived from special taxes on abutting property. The system provided for making special assessments in chapter 8 starts out in ¿ 93 with permission to the city council, whenever it deems it expedient, to "make *any improvement*" of a street, of the kind authorized by ¿ 8 and other sections enumerated, to proceed in a certain way, which, according to the contention of the appellee, would lead to a special assessment for "graveling," but would leave the city itself to pay for the grading which must precede the graveling; which we do not consider to be a reasonable interpretation of the act.

The judgment of the court below will be reversed, with instructions to the successor of that court to overrule the demurrer, and proceed with the case in accordance with this opinion.   Costs to the appellant.

ANDERS, C. J., and HOYT, SCOTT and DUNBAR, JJ., concur.