[No. 12199.   Department Two.   January 16, 1915.]

LILLY ZELLERS et al., Respondents, v. THE CITY OF BELLINGHAM, Appellant.[1]

MUNICIPAL CORPORATIONS—STREETS—CONSTRUCTION WORK—INJURY TO PEDESTRIAN—NEGLIGENCE — KNOWLEDGE OF CITY — ASSUMPTION OF RISKS. A city is not liable for injuries sustained by a pedestrian in stepping across a cable necessarily used by the city in street construction work, of which plaintiff had notice, and who was tripped by the tightening of the cable on starting up the donkey engine, unless the city or some city agent had notice, or in the exercise of ordinary care, must have had notice that the plaintiff was about to step over the cable at the time the donkey engine was started; notwithstanding that the street was not closed to traffic, as the cable was itself notice of danger of which pedestrians assumed the risk when attempting to cross without any notice to the city.

SAME—INJURY TO PEDESTRIANS—NEGLIGENCE—QUESTION FOR JURY. In such a case, the negligence of the city is a question for the jury, where plaintiff testified that the cable was lying loose upon the highway, and was suddenly raised as she was in the act of stepping over

[1]Reported in 145 Pac. 613.

it, while the evidence of the defendant was to the effect that the cable was taut, and after watching the work while the cable was in this position, plaintiff attempted to step over it and caught the heel of her shoe on the cable and fell, and the city employees did not see her until she had fallen.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered December 6, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained by pedestrians through street construction work. Reversed.

*Dan F. North* and *Kellogg & Thompson*, for appellant.
*Thos. R. Waters* and *Wm. J. Biggar*, for respondents.

MOUNT, J.—Action for damages on account of personal injuries. The case was tried to the court with a jury on issues made by the pleadings. The jury returned a verdict in favor of the plaintiffs for $2,500. The defendant has appealed.

It appears that the city of Bellingham was improving Central avenue, one of the principal streets in the city. This avenue runs north and south. The east side of the avenue, thirty feet in width, had been improved by piling and capping, upon which capping planking had been laid. The west side was being improved in the same manner. The street was being built upon tide lands and necessitated piling, capping, and planking to be laid thereon in order to be improved. The contractor for the city used a pile driver in doing the work. This pile driver was built upon a framework upon which was also situated a donkey engine which operated the pile driver, and which was used for the purpose of moving the pile driver.

The easterly side of the street, which had been planked to the width of about thirty feet, was being used by pedestrians. There were no barricades to prevent pedestrians from using the finished portion of the street. In doing the work, it was necessary to move the pile driver from place to place as the

work progressed. On March 1, 1913, a cable was carried from the pile driver to the east side of the street across the planked portion thereof, and fastened to a telephone pole for the purpose of moving the pile driver.

The testimony on behalf of the plaintiffs tended to show that they were upon the street on the day named looking at the work which was being done. They had gone a little distance away to where a dredger was making a certain fill. They then walked up to where the pile driver was at work. They watched the pile driver for a few minutes. They were standing near the cable which was attached to the telephone pole for the purpose of moving the pile driver. After standing for a few minutes, Mrs. Zellers, seeing that the cable was lying upon the street, spoke to her husband saying that they could then cross the cable, or words to that effect. She testified that, as she was in the act of stepping over the cable, which at that time was lying upon the planking of the street, the engine of the pile driver was suddenly started, the cable was raised, and her foot was caught as she was in the act of stepping over the cable, and she was thrown upon the roadway and severely injured. Others of her witnesses testified to the same effect.

This statement of the occurrence was disputed by the defendant. It contended and produced witnesses to the effect that, at the time the plaintiffs came up to the cable, it was taut; that one end of the cable was fastened to the telephone pole across the completed portion of the street, and about twenty inches above the flooring of the street; that the other end of the cable was fastened around the lower portion of the frame of the pile driver, a little below the surface of the planking to the west of the thirty-foot strip; that it extended at an angle from the pile driver to the telephone pole, and that, at the middle of the completed portion of the street, the taut cable was from eight to fifteen inches above the plank roadway; that Mrs. Zellers, while the cable was in this position, attempted to step over the cable, caught her heel

or foot on it, and fell to the floor; that the person operating the pile driver did not know Mrs. Zellers was about to cross the cable, and did not see her until after she had fallen. This was the principal issue in the case.

The court instructed the jury as follows:

"You are further instructed that if you find from the evidence by a fair preponderance thereof that at the time the plaintiff, Lillie Zellers, attempted to pass over the cable the same was lying still on the surface of the improved portion of the street or was then still and near the surface of the street and in such position that a person of reasonable prudence and caution under all the conditions and circumstances, as they then and there existed, would have considered it safe to pass over the cable, and if you further find from the evidence by a fair preponderance thereof that the plaintiff, Lillie Zellers, in the exercise of ordinary care and prudence for her own protection and safety attempted to pass over the cable, while the same was in such position, and that while so attempting to pass over the cable, the defendant, acting by and through the contractor, Sauset, his agents and employees, without warning to said plaintiff, Lillie Zellers, suddenly started up the engine of the pile driver, and drew the cable taut and thereby struck the said plaintiff with the same and raised her up and threw her on the street, and thereby injured her as alleged in the complaint, then and in such case, it would be your duty to find for the plaintiff and against the defendant city."

The court refused to give the following instruction:

"You are instructed that before you can find a verdict for the plaintiff in this case you must find, from a fair preponderance of the evidence, that the plaintiff, without any negligence on her part contributing thereto, attempted to step over the cable described in the evidence in this case, while the said cable was lying upon the planking of Central avenue, and that some agent of the defendant city of Bellingham, with knowledge that she was attempting to step over said cable, or who by the exercise of reasonable diligence should have known from some word or action of the plaintiff, that she was about to step over said cable, started or caused to be started the donkey engine attached to said cable and

as a result said cable was raised in the air, and the plaintiff was tripped or thrown and injured by the raising of said cable."

It will be noticed that the difference between these two instructions is, that, in the one given, the jury was not told that, before a recovery could be had, it was necessary that the city, or some agent of the city, must have had notice, or in the exercise of ordinary care must have known that Mrs. Zellers was attempting or was about to step over the cable. This was clearly error. Because if the city did not know, or in the exercise of reasonable diligence was not required to know, that the plaintiff Mrs. Zellers was about to step over the cable at the time it was started, there was clearly no negligence on the part of the city. The court should have given the instruction refused, or at least should have modified the instruction given so as to contain this element of notice or knowledge.

In the case of *Pearson v. Willapa Construction Co.*, 72 Wash. 487, 130 Pac. 903, which was a case very similar to this one, we said that the plaintiff could not recover, for three reasons:

"(1) Appellant was not in a dangerous situation until he stepped over the cable; (2) there is nothing to show that respondent knew, or should have known, that appellant was about to step over the cable; (3) there is nothing to show that respondent knew, or had received any intimation, that appellant was in a dangerous position with regard to the cable when the cable was started. Hence, the basis on which that contention rests—one person negligently exposing himself to danger, the other with knowledge of such fact omitting due care for the purpose of avoiding injury—is here lacking. Appellant could plainly see what was going on; the scraper and moving cable were plainly indicative of their use; and with these facts clearly before him, he chooses his own time to act, with no intimation or knowledge on the part of respondent that he was about to so act."

And so it is in this case. If the cable was lying upon the completed roadway, as the plaintiffs' evidence tended to

show, then, in order to show negligence on the part of the
agents of the city operating the cable, it was necessary to
show that the agent at the time the engine was started
knew, or should have known, that the plaintiff Mrs. Zellers
was attempting to cross, or was about to cross the cable at
that particular time.   Otherwise, there was no negligence.
A recovery in the case depends upon negligence of the city.
It certainly was not negligence for the city to be improving
the street by the means employed.   It seems to be conceded
that the means employed were necessary.   The plaintiffs
themselves, by their own testimony, knew that the cable was
across the street; they knew it was being used for the pur-
pose of moving the pile driver; and they knew that, when the
engine was in motion, the cable would be raised above the sur-
face of the street, because they had watched its operation
and, a very short time before they attempted to cross, saw
its position.   It is true that other people, especially pedes-
trians, were using the street at that time, and that the street
was not closed to traffic.   But the mere fact that a cable lay
across the street, and was being used at that particular time,
was itself a warning of danger, and persons attempting to
cross it were assuming the risk, unless those operating the
cable knew, or in the exercise of ordinary care should have
known, that persons were upon the cable, or about to step
over it, or were in a dangerous place at the time it was about
to be raised or put into operation.   Clearly the only negli-
gence, if there was any negligence at all, was in raising the
cable when the plaintiff Mrs. Zellers was in a dangerous
position.   In order to show negligence, therefore, it was nec-
essary to show that the agents of the city knew, or should
have known of her position.   The court entirely omitted this
element from the instruction, and it was therefore erroneous.

It is argued by the respondents that the case of *Pearson
v. Willapa Construction Co.*, *supra*, was in substance over-
ruled by the later case of *Lautenschlager v. Seattle*, 77 Wash.
12, 137 Pac. 323.   That was an entirely different case from

this. In that case, the negligence consisted in maintaining a temporary sidewalk six inches lower than the cement walk, at a place where the lights cast a shadow upon the permanent walk, so that travelers upon the highway could not see the danger; and no warnings were posted near the place to prevent pedestrians from falling upon the walk. The *Pearson* case, upon which the appellant relies in this case, was not even mentioned in the later case.

The appellant insists that its motion for a directed verdict should have been sustained. But we are satisfied that, if the plaintiffs' evidence is to be believed to the exclusion of the defendant's evidence, there was a question for the jury to determine whether the accident happened in the way the plaintiffs testified, or in the way the evidence for the defendant tends to show that it happened. If the plaintiffs' version is the correct one, then the right to recover depends upon the fact whether or not the city or its agents knew, or in the exercise of reasonable caution should have known, that the plaintiff Mrs. Zellers was in the act of stepping over the cable when it was lifted from the street. And that, we think, is a question for the jury.

Other errors are assigned in the briefs to the effect that the court erred in refusing to grant a new trial. But from what we have already said, it is apparent that it is not necessary to discuss these questions, because a new trial must be granted for the error noticed.

The judgment is therefore reversed, and the cause remanded for further proceedings.

CROW, MAIN, and ELLIS, JJ., concur.

FULLERTON, J. (dissenting)—As stated in the majority opinion, the city of Bellingham, at the time the respondent received the injury for which she sues, was engaged through a contractor in improving one of its principal streets. One side of the street, the east half, had been theretofore improved by the city, had been open to public travel, and was then

in actual use by the public; many persons passing over it each day. The contractor, in the course of the work, and for the purpose of moving a pile driver, stretched a cable across the traveled way, fastening it to a telephone pole on the opposite side of the street in such a manner that, when no strain was put upon the cable, it would lie flat upon the surface of the street, but when a strain was put thereon, would raise up from such surface for a distance of some twenty inches. While the cable was in place, the respondent, who was subsequently injured thereon, passed over the street, and coming to the cable found it lying on the surface of the street. She started to cross over it, and while she was in the act of stepping over it, a strain was put thereon causing it to raise. In raising, the cable tripped her, throwing her down upon the street and caused her severe injuries. On this state of facts, the majority hold that the injured person cannot recover unless she is able to show that the city, or some agent of the city, knew, or by the exercise of ordinary diligence should have known, that she was in the act of stepping over the cable at the time it was raised; "Because," it is said, "if the city did not know, or by reasonable diligence was not required to know, that the plaintiff, Mrs. Zellers, was about to step over the cable at the time it started, there was clearly no negligence on the part of the city." With all due respect to my associates who concur in this conclusion, I think it without foundation in either reason or authority.

It is a fundamental rule, to substantiate which it would be a work of supererogation to cite authorities, that a city, when it opens a street for public use, must keep it in a reasonably safe condition for travel. It may lawfully, of course, improve a street without closing it entirely to public travel, and may lawfully, in the course of the work, place obstructions or dig trenches therein, provided it leaves the part of the way left open for travel reasonably safe for travel, and uses reasonable care and diligence to protect the public from injury by the defects. It is a general rule, and the rule in this

jurisdiction, although perhaps not a universal rule, that the city cannot relieve itself of its primary duty in this regard by letting the work of improving a street to a contractor. This we held in *Drake v. Seattle*, 30 Wash. 81, 70 Pac. 231, 94 Am. St. 844; in *McClammy v. Spokane*, 36 Wash. 339, 78 Pac. 912; in *Peterson v. Seattle*, 40 Wash. 33, 82 Pac. 140, and in *Lasityr v. Olympia*, 61 Wash. 651, 112 Pac. 752.

It is a general rule, also, that there is a difference in respect to the notice necessary to create liability whether the defect is the result of positive misfeasance on the part of the city, or is the result of mere neglect or nonfeasance on its part—that is to say, whether the defect causing the injury was the immediate act of the city or its agent, or whether the defect arose from natural causes, as by wear from use; as, in the one case, the city is bound to take notice of the obstruction from the fact of its creation and is directly chargeable with any injury caused thereby; while, in the other, it must be shown to have had actual notice, or it must be shown that the defect existed for such a length of time as to imply notice, before it is so chargeable.  See, in addition to the cases before cited, the cases of *Beall v. Seattle*, 28 Wash. 593, 69 Pac. 12, 92 Am. St. 892, 61 L. R. A. 583; *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; and *Hayes v. Seattle*, 43 Wash. 500, 86 Pac. 852, 117 Am. St. 1062, 7 L. R. A. (N. S.) 424.

Concerning the facts pertinent to the inquiry, the court knows judicially that the city of Bellingham is a city of the first class; that it had a population, as shown by the United States census of 1910, of 24,577, and an estimated population, made by the same authority in the year of the accident, of 29,937.  It knows from the record that the street on which the accident happened was one of the principal streets of the city; that it was left open for travel and was "traveled by hundreds of people daily;" that no guard of any kind was placed around or near the cable; that the obstruction was of such a character when not in use as to allay

suspicion or fear, and when put in use likely to become highly dangerous. The injured respondent, therefore, was not a trespasser on the street, but, on the contrary, was lawfully thereon. She had the right to assume, and to act on the assumption, that she could pass with reasonable safety over any part of the street left open for travel; and had the right to assume, and to act on the assumption, that the city would not on a sudden, and without warning, change any part of the street from a safe to a dangerous condition.

In the light of these legal principles, and in the light of the conceded facts, I am wholly unable to understand on what theory it can be held that the city was not in this instance guilty of negligence. It seems to me that the city, instead of being free from negligence if it operated the cable without notice, actual or implied, that some person was about to cross over it, was guilty of the grossest negligence if it operated it without first ascertaining that no person was about to or was in the act of crossing over it. It being the primary duty of the city, when it places a dangerous obstruction in a street which it leaves open for travel, to guard and protect the public from injury by such obstruction, the rule, as I understand it, is that it is liable to any one injured from the mere neglect of that duty, unless, of course, it can show that the injured person was himself guilty of negligence contributing to the injury. To hold with the majority in the present case is to hold that the city owed no duty to the respondent other than to refrain from wantonly injuring her. But this is the rule with relation to trespassers only, to persons wrongfully at the place of injury, and has no application to the person rightfully at the place of injury. A person rightfully at the place of injury, and pursuing his way with ordinary care, can recover for an injury caused by a defect in the street by showing mere negligence on the part of the city, he does not have to show a wanton injury. The rule of the majority places the burden on the wrong party. Instead of its being the respondent's duty to notify the city

that she was about to cross the cable to cast liability upon the city, it was the city's duty, in order to free itself from liability, to notify her before she attempted to cross that it was about to use the cable in such a manner as to change it from a safe to a dangerous condition. The instruction given by the court, therefore, states the true 'rule, not the instruction the majority say should have been given.

The case relied upon by the majority to sustain their contention is *Pearson v. Willapa Construction Co.*, 72 Wash. 487, 130 Pac. 903. It is said that the case is very similar in its facts to the present case, but, with due respect to my associates, I think the only similarity is that the plaintiff was in each instance injured by a cable. The cases differ fundamentally. The case cited was rested on the principle that the injured person was a trespasser; that he was traveling where he had no right to travel; and that the operator of the cable owed him no duty to keep the way in a reasonably safe condition for travel, or any duty other than not to wantonly injure him. In the case at bar, the respondent was not a trespasser; she was traveling on a public street where she had a right to be traveling; the city owed her the duty of keeping the street in a reasonably safe condition for travel, and, in consequence, is liable if it neglected that duty to her injury, whether the negligence amounted to wantonness or not. I dissented from the case cited, but not upon the questions of law on which it was rested. It was my opinion that the evidence in the case justified submitting to the jury the question whether the way over which the injured person pursued was of such public use as to make it a *quasi* public way; contending for the rule of law that, if it was a way in common use by the public, the contractors could not place and leave unprotected dangerous agencies across it without rendering themselves liable to answer for injuries caused thereby. I did not then, and do not now, understand that the majority disagreed with me on the principles of law

involved, but that the differences arose from the discordant views taken as to the effect of the evidence.

Of the cases decided by this court which I think contrary to the conclusion reached by the majority, I will notice but a few, and first, the case the majority attempt to distinguish, namely, *Lautenschlager v. Seattle,* 77 Wash. 12, 137 Pac. 323. In that case, the appellant was injured by a defect in the street which was in the process of improvement. Stating the general rules governing in such cases, this language was used:

"Where the public use a street upon the invitation of the city, either express or clearly implied, the duty devolves upon the city to use reasonable care to keep it in a reasonably safe condition for travel. *Taake v. Seattle,* 16 Wash. 90, 47 Pac. 220; *Cady v. Seattle,* 42 Wash. 402, 85 Pac. 19. A traveler is not required to avoid a particular street because there is another and safer one that he may take. He has a right to travel upon any street which the city leaves open for travel. *Cady v. Seattle, supra.* Where a city undertakes to improve a street, it is required to use reasonable precautions to guard the public from injury, and in doing so may, if necessary, temporarily close the street to public travel. *Peterson v. Seattle,* 40 Wash. 33, 82 Pac. 140. It was incumbent upon the city to provide signals or warnings if the walk was in common use and dangerous, and it knew, or in the exercise of reasonable care ought to have known, its condition. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847."

Notwithstanding the statement of the majority that the case cited is an entirely different case from the case at bar, I can conceive no reason why the principle announced is not applicable. In the one case, the defect consisted in faulty construction; in the other, a cable stretched across the street. Surely, if it was necessary to put up guards and give warnings to protect from liability in the one case, it was equally so in the other.

In *Hayes v. Seattle,* 43 Wash. 500, 86 Pac. 852, 117 Am. St. 1062, 7 L. R. A. (N. S.) 424, the plaintiff was injured

by falling through an open trap door constructed in a sidewalk on one of the principal streets of the city. The doors were double and opened upwards, and when opened of themselves formed barriers. At the time of the accident, but one of the doors was open, and the plaintiff approached from the opposite way. It was held that the city was liable for the injury on the principle that the opening was on a prominent thoroughfare, in constant use by pedestrians, and that the city knew or ought to have known that to open the doors at any time was dangerous, and, knowing this, was guilty of negligence in not providing for proper guards when they were permitted to be opened. In *Lasityr v. Olympia,* before cited, the plaintiff was injured by falling over a wire netting stretched across a sidewalk to protect a place therein which was being repaired by the owner of the abutting property with the permission of the city. The city was held liable on similar principles. Manifestly the principle of these cases is contrary to the principle announced in the case at bar; for, if the liability of the city depends on its knowledge of the position of the person injured at the time of the immediate happening of the injury, there could have been no recovery in either of them.

But I need not pursue the authorities. They are all one way, and all against the rule announced by the majority.

Judge Mount, writing for the majority, uses this further language, namely:

"The plaintiffs themselves, by their own testimony, knew that the cable was across the street; they knew it was being used for the purpose of moving the pile driver; and they knew that, when the engine was in motion, the cable would be raised above the surface of the street, because they had watched its operation, and a very short time before they attempted to cross, saw its position. It is true that other people, especially pedestrians, were using the street at the time, and that the street was not closed to traffic. But the mere fact that a cable lay across the street and was being used at that particular time was itself a warning of danger,

and persons attempting to cross it were assuming the risk, unless those operating the cable knew, or in the exercise of ordinary care should have known, that persons were upon the cable, or about to step over it, or were in a dangerous place at the time it was about to be raised or put into operation."

But this, as I understand the rule, goes only to the contributory negligence of the respondent. It is true, of course, that, if the respondent was herself guilty of negligence, she cannot recover, even though the city were negligent; and if it is meant to be said that there was such contributory negligence as a matter of law to prevent recovery, then the case should be returned with instructions to dismiss and not for a retrial. Clearly, to say that she was guilty of contributory negligence, does not argue in favor of the principle upon which the case is reversed.

In my opinion, the city was negligent in stretching the cable across the street and operating it in a manner dangerous to the traveling public without warning, and is exempted from liability to those only of the traveling public injured thereby to whom warning was unnecessary. As I agree with the majority that the respondent cannot be charged with contributory negligence as a matter of law, I conclude that the case should be affirmed rather than reversed.