[No. 15742.   Department One.   September 16, 1920.]

HENRY THOMPSON, *Appellant*, v. THE CITY OF
BELLINGHAM, *Respondent.*[1]

MUNICIPAL CORPORATIONS (444, 470)—STREETS—DEFECTS—ASSUMP-
TION OF RISKS—CHOICE OF WAYS—INSTRUCTIONS.  One who is familiar
with the locality and knows the danger of turning off a street lead-
ing to a bridge on an unguarded railroad trestle assumes the risk
where he voluntarily chose that way in an unusual condition of
foggy weather, if prudence and care requires him to avoid it by
another convenient and safe way.

SAME (423)—STREETS—DUTY OF CITY.  A city is only required to
use reasonable care to keep its streets in a reasonably safe condition
for travel.

APPEAL (460)—REVIEW—HARMLESS ERROR—INSTRUCTIONS.  Error
in instructing as to the duty of the city is harmless where the plain-
tiff's contributory negligence was the approximate cause of the
accident.

MUNICIPAL CORPORATIONS (437) — STREETS — DEFECTS—UNUSUAL
DANGERS—BARRIERS.  A city is not liable for failure to place barriers
where they were forbidden by the public service commission.

APPEAL (465)—REVIEW—HARMLESS ERROR—INSTRUCTIONS.  Error
cannot be predicated upon the failure to instruct as to contributory
negligence where the jury found that issue in favor of the appellant.

Appeal by plaintiff from a judgment of the superior
court for Whatcom county, Hardin, J., entered June
27, 1919, upon the verdict of a jury rendered in favor
of the plaintiff, in an action in tort.  Affirmed.

*Bixby & Nightingale,* for appellant.

*T. D. J. Healy,* for respondent.

MITCHELL, J.—This action was brought against the
city of Bellingham to recover damages for injuries
alleged to have been caused by the negligence of the
city in failing to keep the north end of Prospect street
in a reasonably safe condition for public travel.  The

[1]Reported in 192 Pac. 952.

answer denies negligence on the part of the city and affirmatively alleges contributory negligence of the plaintiff. The plaintiff is a physician. He and his wife were injured in the accident. He sued to recover the sum of $5,669.45. There was a trial by jury, which resulted in a verdict of $217.45. A motion for a new trial was made by the plaintiff, denied by the court, and from a judgment entered upon the verdict, the plaintiff has appealed.

The first assignment of error is the denial of the motion for a new trial, based upon the ground of inadequacy of damages allowed. It is contended by the appellant, and now formally conceded by the respondent, that the verdict was reached by simply adding together the hospital and auto repair bills. Whereupon, the appellant interposes a motion that this court reverse the judgment and remand the cause to the lower court for a new trial upon the single issue of the amount of appellant's damages. Our view of the case in other respects makes it unnecessary to notice this assignment of error and the motion, other than to say the one is without merit to effect a reversal and that the other will be denied.

A fuller understanding of the case may be made before considering other assignments of error. The injuries complained of occurred in an accident on a street railway trestle over Whatcom creek, at the north end of Prospect street, in the city of Bellingham, about 3:30 p. m., on December 16. Prospect street is a short, much traveled street, running northerly, from Holly street, five or six blocks to Whatcom creek, where it ends. It is forty-six feet wide between the curbs, and paved with brick to a point about seventy-five feet from its north end, where its surface drops down slightly to plank pavement that extends to the north

end of the street. Near the north end the street slopes
downward one and one-half to two per cent. It is inter-
sected at the north end from the east squarely by
Lottie street, which terminates at the intersection.
Central avenue crosses or runs into Prospect street,
next south of and parallel with Lottie street. On the
west side of the north terminus of Prospect street and
connecting with it, a concrete bridge about seventy
feet long has been constructed across the creek. The
bridge is the southern terminus of Dupont street. The
turn to the left from Prospect street onto and across
the bridge is rounding at the inside curb, and thence
on from Prospect street at an angle not greater than
forty-five degrees. Dupont street leads on towards
the north limits of the city. The bridge is twenty-four
feet wide between five-feet walkways, and is provided
with heavy substantial concrete bridge rails. For a
number of years, until a few years before the accident,
the way across the creek was over a wooden bridge
more nearly at a right angle with Prospect street. For
eighteen or twenty years the street railway track has
been in use along the center of Prospect street. Near
the north end of the street the car track turns slightly
to the east of the thread of the street, thence runs on
beyond the end of the street on private property, and
immediately crosses the creek on the car company's
trestle. The trestle can be clearly seen from any point
two or three blocks south on Prospect street. On the
east side at the north end of the street, there is a fence
four feet high, four boards, eighteen feet long, extend-
ing from a point six feet east of the east rail of the
car track to the corner of a building on the north side
of Lottie street. On the opposite side of the street
railway track the southerly end of the easterly bridge
rail comes within five feet and ten inches of the west

rail of the street car track. The evidence shows, with reference to the barriers on each side of the car track, that the city authorities followed the instructions of the public service commission not to place obstructions or barriers nearer than five feet to the rails of the car track. To provide light for the locality, the city maintained a post light built on each end of the concrete bridge rails, an arc light on a pole placed by the wooden barrier near the corner of the wooden building on the north side of Lottie street, another arc light suspended near the center of Prospect and Lottie streets, and still another on a pole on the west side of Prospect street about fifty feet south of the turn onto the bridge. None of the lights, however, were burning when the accident happened to the appellant.

The evidence is perfectly clear from the appellant himself, substantially as follows: He has practiced medicine and surgery in Bellingham the last twenty years; his office was at number 7 Prospect street, and for the last three years his residence was about two miles north from his office and within the city limits; the most direct route from his home to his office took him over Dupont and Prospect street, that was his regular route; there were other streets he could use for that purpose, but they were not so direct; he used a Ford sedan, commencing in July, 1918. He further testified:

"I traveled over that street a great number of times before the concrete bridge was put in and afterwards. I knew where the street car track went down Prospect and on across Whatcom creek; knew it well . . . I knew that the street car track left the street and went over this trestle bridge."

Returning to his office on the day of the accident, he left his residence, accompanied by his wife, at two

o'clock in the afternoon. At that time and place the sun was shining. As to the drive to the office, he said:

"I could see plainly enough. There would be a fog and then there would be an intermission of sunlight, and so on until I got down to the bridge, but the closer I got to the bridge the more dense the fog was."

Arriving at his office, the doctor remained in, his wife went out shopping. The next hour the fog became more noticeable around his office building, thicker at times than at others. At 3:30 p. m., upon the return of his wife to the office, they immediately started home, lighting the automobile. He testified:

"I took the precaution to start home a little earlier because I was afraid of it getting dark, and I took that precaution. I was afraid of the fog because it was extremely dense and heavy that day . . . after leaving Central avenue, I could not see the ground at all. I only knew my relative position on the street from where I was back on Central avenue, . . . as I coasted along down Prospect street I was not conscious as to when I left the pavement and got onto the plank, . . . I kept to the right of the center line of the street. I expect I kept pretty close to the street car line. I might have deviated a little. As a general thing, I drove pretty near the right-hand rail of the car track. I didn't drive over close to the right-hand curb. I should not want to do so. I followed the rail of the track until I got to Central avenue and then could not see it, because the fog was so dense. I knew there was a turn there somewhere, but I could not see where I was going or I should not have run into that trap."

Mrs. Thompson testified, among other things, as follows:

"The doctor stopped at the office and I did some shopping. I went up to the book store and was looking at books, and finally looked out and the sun was shining, but there was some fog, and I rushed down

to the office and said to the doctor that I thought we had better start for home and, of course, the fog was more dense down there than it was up at the book store. It seemed to be in places thicker than in others. It was early for us to start home, but I thought that it would be darker as it went later in the afternoon, and I said that he had better start for home, and we did. He lighted the lights, all of them, on the automobile, and we were driving very slowly—as slow as we could possibly go and keep the machine going. . . . The windshield was open, and both side windows were open. I could see out, but the fog was so dense, of course, you could not see any distance ahead of you at all. When we were probably half way down, or more than half way down, to the bridge there was just a wall of fog. You could not see anything. You could not see the sidewalk nor the buildings along the street on either side. I first discovered where we were when the machine tipped over.''

The second assignment of error relates to an instruction upon the subject of the prudence and care required of a traveler upon a street if the evidence shows a place approached to be dangerous on account of a foggy condition of the weather, and the duty to avoid it if there is another convenient and safe way. The instruction is lengthy and we do not reproduce it. Appellant contends this court has repeatedly held it to be a question for the jury only as to whether an ordinary prudent person would have selected some other than his customary route. The cases relied on are not applicable here. Generally they are cases in which the defects in the customary way were caused by the negligent acts of the city in creating or permitting them to continue. The true distinction is pointed out in *Stock v. Tacoma,* 53 Wash. 226, 101 Pac. 830, as follows:

''Appellant contends that this case falls within the principle announced in 5 Thompson on Negligence,

§ 6273: 'One who, with full knowledge of the defective condition of a sidewalk, crosswalk, or roadway, and of the risks incident to its use, voluntarily attempts to travel upon it, when the defect can easily and without substantial inconvenience *be avoided by going around it* or taking a safer way, is not in the exercise of reasonable care, but *assumes the risk,* and cannot recover damages from the city for any resulting injury.' In support of this rule appellant cites many authorities, some of which sustain its contention upon facts almost identical with those here presented. The principle there announced should not, however, be or have been extended to cover a case like the one at bar. As originally announced and properly applied, it governs only those cases where an unusual condition exists; as, for instance, icy or slippery sidewalks, sidewalks or streets in course of repair, or unusual obstructions in the way of pedestrians. Here we have a known condition, a walk made by the city along a bulkhead, without guard rail or light to secure the pedestrian; itself an invitation to travel by night as well as by day."

The present case is one in which an unusual condition of foggy weather existed. It came on rapidly, and up until the time of the accident it appeared to be partial, uneven and changing, and there is no evidence to show that the city had notice, actual or constructive, of the fog bank entered by the appellant at a place well known by him to be possible of danger. The instruction as given was proper.

The next assignment of error relates to an instruction to the effect that the city is required to keep its streets only in a safe condition for travel. The charge against the instruction is its inapplicability because the evidence shows the place where the accident happened was obviously dangerous. We are unable to surmise anything the city omitted to make the locality safe, considering the rights of the street car company and the orders of the public service commission concerning

the passageway for street cars at the north end of Prospect street. Surely there should be no indulgence in the unreason of requiring the city to anticipate and provide against the danger of the fog bank at the bridge as the appellant went home. If the danger was obvious, it was so only to the appellant, who persisted in proceeding in the face of an unusual natural condition rapidly occurring and completely baffling only within a limited area. Being perfectly familiar with the condition of the locality, now suddenly obscured by a bank of fog, appellant had no right to act on the ordinary presumption that this particular way or place was safe, or that it did not hold out the possibility of his straying through the gap onto the railway trestle. Strictly speaking, the instruction was less favorable to the city than it might have been—"the duty devolves upon the city to use reasonable care to keep it (street) in a reasonably safe condition for travel." *Lautenschlager v. Seattle,* 77 Wash. 12, 137 Pac. 323.

The next assignment relates to an instruction touching the duty of the city to provide street lights in the daytime during foggy weather. As an abstract proposition of law, the particular wording of the instruction may go too far, but, under the facts as they existed in this case, the instruction is not faulty. It is unimportant in any event, for we are satisfied, as a matter of law, that the appellant's contributory negligence was the proximate cause of his injuries.

Next it is claimed there was error in the instructions, (a) upon the subject of barriers erected by the city; and (b) as to anticipating and providing against unusual dangers at the place in question. As to the one, it is claimed to be inapplicable, manifestly because of the gap through which the street railway is laid. It has already been noticed that the orders of a superior

authority were observed in that regard and that appellant was fully aware of the situation. As to the other, while it is true one has the right to rely on reasonable provisions for the safety of travel on streets by night as well as by day, it is clear the instruction relates to an unusual local condition or darkness caused by fog in the daytime. Both instructions, as given, were proper in this case.

The last assignment complains of an instruction upon the subject of contributory negligence, predicated upon conditions the appellant contends do not exist in the case. It is unnecessary to decide, among other reasons, because, if there was error, it was harmless, for the jury, by its verdict, was with the appellant in this respect.

The cause is one in which the appellant took a chance instead of precaution. It is plain he was unduly imprudent and did not use the requisite care. Our views herein are supported by the conclusions reached in the cases of *Chase v. Seattle,* 80 Wash. 61, 141 Pac. 180, and *Hobert v. Seattle,* 32 Wash. 330, 73 Pac. 383. Counsel for the respondent, while stoutly arguing against the alleged negligence of the city and insisting upon the contributory negligence of the appellant, has taken no appeal for the city from the judgment, which is hereby affirmed.

HOLCOMB, C. J., PARKER, MAIN, and BRIDGES, JJ., concur.