[No. 2112–3.   Division Three.   October 5, 1977.]

NINFA TANGUMA, *Appellant,* v. YAKIMA COUNTY, *Respondent.*

*Edwin S. Stone* and *Koenigsberg, Brown, Sinsheimer, Stone & Meltzer, Inc., P.S.,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *James E. Davis, Deputy,* for respondent.

STAPLES, J.*—Plaintiff appeals from an order granting summary judgment to defendant Yakima County. Except for the statement in the order that "it further appearing as a matter of law that there is no material evidence of a violation of a duty to the plaintiff on the part of said defendant," neither the order nor the remainder of the record indicates the basis for the conclusion that plaintiff has failed as a matter of law to demonstrate the existence of a genuine issue of fact.

This is an action for damages resulting from an accident near Sunnyside, Washington, on September 30, 1973. Plaintiff was traveling north on Scoon Road at approximately 45 m.p.h., approaching a bridge across the Roza Canal. A pickup operated by defendant, William Bradshaw (not a party to this appeal), was traveling south. Plaintiff contends that due to a rise in the road she could not see the other vehicle until moments before they met at the bridge. She contends that the oncoming driver was traveling at a high rate of speed and that he used more than his share of the bridge as he crossed it, leaving her inadequate room to pass the oncoming vehicle on the bridge and causing her to turn to her right into the canal. There was no impact between the two vehicles. Plaintiff's claim against the

---

*Judge Fred R. Staples is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

county is based upon her assertion that the bridge was too narrow to permit adequate passage of oncoming vehicles and that this fact was inadequately communicated to users of the road.

Scoon Road is a generally straight two-lane county road approximately 26 feet wide, including the shoulders, of which approximately 20 feet is paved south of the bridge. North of the bridge the road is gravel. The speed limit is 50 m.p.h. The bridge itself is 20 feet wide with railings on both sides; its length does not appear of record, but apparently it is fairly short. The roadway had no marked center line, and there were no warning signs either direction from the bridge to denote the presence or character of the bridge.

The bridge was built by the federal government (and accepted by the defendant) in the early 1940's in accordance with the then prevailing standards being the 1935 AASHO (American Association of State Highway Officials) standards.

Plaintiff's experts contend the narrow bridge presents an "extra hazardous" situation and that warning signs and center line striping (south of the bridge) should have been provided.

Plaintiff's experts contend that standards in effect at the time of the accident (1965 AASHO standards) require a wider bridge or traffic control devices for preexisting bridges not meeting the standards. Defendant's experts take issue with respect to the applicability and interpretation of these standards by plaintiff's experts. Plaintiff's experts also contend, utilizing certain measurements, that there is a crown in the road at the bridge which reduces the stopping sight distance and passing sight distance to an unacceptable level, thus requiring warning devices conveying this fact. Utilizing other measurements, or by interpreting the same measurements differently, defendant's experts conclude there is no sight distance deficiency.

Defendant contends that the only requirement for warning of a narrow bridge is contained in the "Manual for Signing" (1968 ed.). This apparently was in effect at the

same time on an optional basis as the 1971 "Manual on Uniform Traffic Control Devices" § 2C–20, at 2 (adopted by the State Highway Commission on March 20, 1972, in WAC 252–28) which provides as follows:

A NARROW BRIDGE sign is intended for use in advance of a bridge having a clear two–way roadway width of 16 to 18 feet, inclusive, or any bridge having a roadway clearance less than the width of the approach pavement. Additional protection may be provided by the use of reflector markers.

The 1968 standard is substantially similar.

Although it may be that all bridges of the described character require "narrow bridge" signs, it does not follow that *no warnings* are required on any other bridges. If the sight distance deficiency presents a problem as suggested by plaintiff, it may well be that other warnings may be necessary. Also, the "pavement" *north* of the bridge may be wider than the bridge. Paving includes graveling. *McNair v. Ostrander,* 1 Wash. 110, 23 P. 414 (1890).

Plaintiff's experts, based upon their view of applicable standards, have expressed the opinion that the bridge was "extra hazardous" under the circumstances. *Breivo v. Aberdeen,* 15 Wn. App. 520, 550 P.2d 1164 (1976), supports the proposition that an expert witness may express an opinion that a particular highway defect constitutes an "inherently dangerous condition." *Breivo v. Aberdeen, supra* at 527. "Extra hazardous" and "inherently dangerous" do not appear to represent appreciably different standards of danger, at least in this context.

The best that can be said for these varying viewpoints on the applicability and interpretation of standards and measurements is that they create issues of fact which must be resolved by the trier of the fact.

■ *Lucas v. Phillips,* 34 Wn.2d 591, 209 P.2d 279 (1949), is particularly apropos, since it involves Yakima County's maintenance of a narrow bridge without adequate warning signs. The court indicated there was a duty to post signs warning of the danger if (a) they were prescribed by

law, *or* (b) "the situation is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care." *Lucas v. Phillips, supra* at 595. Depending upon the factual resolution of the issues involving the geography of this bridge, the trier of fact could find the absence of warning signs created a hazardous condition.

■ Defendant attempts to distinguish *Lucas* in that this plaintiff, unlike the driver in *Lucas,* was not a stranger to the area. Plaintiff had previously driven across the bridge many times going to her employment, as well as to pick up her husband at work. Defendant contends that the narrow bridge is not the proximate cause of the accident when the plaintiff is familiar with the road. *Mylnar v. Hall,* 55 Wn.2d 739, 350 P.2d 440 (1960); *Lee v. Sievers,* 44 Wn.2d 881, 271 P.2d 699 (1954); *Thompson v. Bellingham,* 112 Wash. 583, 192 P. 952, 19 A.L.R. 864 (1920); *Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973); and *McGough v. Edmonds,* 1 Wn. App. 164, 460 P.2d 302 (1969).

To the extent that these cases are in point, they merely demonstrate that a person cannot complain of lack of warning of a danger of which he has knowledge. Accepting the evidence most favorably to plaintiff, it is reasonable to infer that proper warnings to the *oncoming* driver may well. have been adequate to cause him to remain on his side of the road and that the county owed *plaintiff* a duty to warn *oncoming* drivers.

We think this distinction was recognized by this court in *McGough,* wherein the plaintiff failed to yield the right-of-way to a favored vehicle at an intersection. The plaintiff sued the city on the theory the intersection was "inherently dangerous" due to vegetation blocking his view, claiming he should have had warning of the danger caused by the obstructed view. The court said in *McGough v. Edmonds, supra* at 170-71:

> If the plaintiff is urging that appropriate signs were required to warn *him* of the inherently dangerous condition of the intersection, then we agree with the defendant

that the absence of such signs would be immaterial inasmuch as plaintiff stopped before entering the intersection. *Lee v. Sievers, supra.*

If, however, plaintiff is urging, as we think he is, that the city breached its duty to *him* by failing to provide signs on the other street, warning the driver that collided with him that the intersection was inherently dangerous, then we think it was incumbent upon him to produce testimony, if he could, that the failure of the city to warn the favored driver would somehow operate to excuse his statutory duty and obligation to yield the right–of–way. This he did not do. . . . In short, we are without factual evidence on which to make a judgment as to whether or not a plaintiff's failure to yield the right–of–way would be excused (1) because of the topography and design of the intersection, (2) because of the actions of the favored driver, or (3) because of the failure of the city to warn that driver.

Unlike *McGough,* the plaintiff in the instant case need not excuse her own conduct before she can connect the lack of warning to the *oncoming* driver as a proximate cause of the accident.

■ The question of whether the bridge and its surroundings present an inherently dangerous situation requiring appropriate warning to users of the highway is a question of fact. The familiarity of the plaintiff or the other driver with the situation may be relevant to this issue, but it does not as a matter of law insulate the county from liability.

We wish to emphasize that maintenance of the bridge, even if it is too narrow, does not alone impose liability on the county. *Lucas v. Phillips, supra* at 596. There is no duty to replace every highway structure not conforming to present–day standards. An adequate warning by the county will suffice.

■ Defendant also contends the conduct of the oncoming driver was the sole cause, or at least an intervening, superseding cause, of the accident. It is beyond dispute that one of the foreseeable risks occasioned by narrow bridges is the risk that oncoming drivers may carelessly, negligently,

recklessly or wantonly trespass upon the territory reserved unto the other. Since this is the risk to be foreseen, it is the risk to be guarded against.

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

Restatement (Second) of Torts § 447 (1965).

If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Restatement (Second) of Torts § 449 (1965).

This principle was cogently articulated in *Lucas v. Phillips, supra* at 597–98:

But the county contends that the maintenance of this bridge without adequate warning signs cannot be considered the proximate cause of the accident; that, on the contrary, the evidence indicates that the intervening and concurring acts of the driver of the truck, Phillips, and of the plaintiff James, in the operation of their vehicles, were the proximate cause thereof, and that the nature of construction of the county's bridge was only a setting for what took place.

It seems to us, however, that whether James' version, or the county's version, of the episode be accepted as correct, the unexpected narrowness of the bridge was an effective cause of the accident without which it would not have occurred. The actions of Phillips and James, even though negligent, would not be superseding causes with

respect to the county's negligence, if the county, under the circumstances, should have realized that drivers on the bridge might act as they did. The jury could well have found that this was precisely the type of accident which the county could, and should, have foreseen would be likely to happen as the result of its failure to place proper warning signs. If it did so find, under the circumstances of this case, the county would be liable. *Berglund v. Spokane County, supra.* [4 Wn.2d 309, 103 P.2d 355 (1940).]

No doubt it can be argued that the oncoming driver might have acted negligently, even if he either knew of the situation himself or received adequate warning, but this does not excuse the failure to warn any. more than the failure of an airline to provide seat belts for its passengers would be excused on the theory the passengers might not use them anyway. It cannot be gainsaid that one who has a duty to warn another of a peril cannot be excused on the theory that the other may be oblivious to the good advice.

▮ Defendant contends since it had no notice of the defective condition, it cannot be held liable. Defendant states in its brief that "The only way that such notice could be imparted to Yakima County is by knowledge of prior accidents at the same location." Defendant is no more entitled to one free accident than a dog is entitled to one free bite.

> Where the defective condition of a highway, street, or bridge causing injury to a traveler was created or maintained by the public authority itself, . . . it is not necessary to show as a condition precedent to liability that the public authority had notice of such condition for a sufficient length of time to remedy it. Thus, the condition of notice need not be established where it is shown that the injury resulted from . . . failure of the public authority to safeguard properly a dangerous place.

39 Am. Jur. 2d *Highway, Streets and Bridges* § 412 (1968). *See also Drake v. Seattle,* 30 Wash. 81, 70 P. 231, (1902); *Zellers v. Bellingham,* 83 Wash. 601, 145 P. 613 (1915) (dissenting opinion per Fullerton, J.).

The requirement of notice is generally necessary only in those situations in which the defect is caused by some agency for which the municipal authority is not responsible, such as in the case of a stop sign removed by vandals or defects caused by the elements.

It may be that defendant is actually claiming, not that it lacked knowledge of the condition of the bridge (which was apparent for 31 years), but rather that it had no notice that such condition was inherently dangerous. If so, it misconstrues the requirement of notice. The question of whether a given condition is inherently dangerous is generally a matter upon which reasonable minds may differ and virtually always decided after the fact, that is to say, in the course of a lawsuit. It usually comes intuitively to those who are charged with responsibility for the condition, or it does not come at all. This is not new in the field of torts where virtually every breach of duty is measured by some standard after the damage is done. In the field of products liability, it would not do for a manufacturer to say he did not know his product was unreasonably dangerous, nor will defendant be heard to protest that it had no "notice" that the situation was inherently dangerous if in fact the jury with the assistance of available expertise in deciphering and applying appropriate standards determines that it was. The fact of, or absence of, prior accidents may be weighed in determining whether the situation was inherently dangerous, but it is only one element in the total equation—not the sine qua non of liability. It is "at most grist for the jury's mill." *Simpson Timber Co. v. Parks,* 1966 A.M.C. 1081, 1085 (1965), *aff'd in part,* 390 F.2d 353 (9th Cir. 1968). When negligent conduct produces a foreseeable risk of injury, the actor may not find refuge in a "long history of good fortune." *Butler v. L. Sonneborn Sons, Inc.,* 296 F.2d 623, 626 (2d Cir. 1961).

We conclude that summary judgment dismissing Yakima County was improvidently granted and remand the case for trial on the merits.

GREEN, J., concurs.

MUNSON, C.J. (concurring)—I concur in the result. The record discloses a material issue of fact, relating to sight distance, which precludes granting summary judgment.

Reconsideration denied November 16, 1977.

Review denied by Supreme Court May 12, 1978.