[No. 39837.    En Banc.    June 11, 1970.]

THE WHITE PASS CO., *Appellant*, v. W. SCOTT ST. JOHN, *Defendant*, JAKE LEINGANG, *Respondent.**

*John Gavin* and *Kenneth C. Hawkins*, for appellant.

*Bruce P. Hanson* (of *Tonkoff, Holst, Hanson & Dauber*), for respondent.

We are presented with the issue of the date on which interest should begin to run on a particular judgment. The judgment in question should have been entered on November 19, 1964, but because of an error by the trial court,[1] it was not actually entered until July 25, 1967, and June 9, 1967 was designated as the date from which the

*Reported in 470 P.2d 548.

---

[1] An error attributable to the persuasive arguments made on behalf of Jake Leingang, the respondent on the first appeal in this case, and the respondent on the present appeal.

interest on the judgment should run. On the present appeal, it is urged that the interest on the then unpaid portions of the judgment should have run from November 19, 1964 to June 9, 1967. As to liability for interest subsequent to the latter date there is no dispute. (The rate of interest is not in dispute, being fixed by statute at "six percent per annum." RCW 4.56.110.)

The single issue presented is not a simple one—as will appear from the narration of the circumstances leading to this appeal.

November 16, 1959, while the work of enlarging the ski lodge belonging to The White Pass Company (hereinafter White Pass) was in progress, there was a disastrous fire caused by the negligence of employees of the flooring subcontractor, W. Scott St. John. An action was commenced (August 24, 1960) by White Pass against the subcontractor to recover for the damages caused by the fire. Not until November 13, 1962 was the general contractor, Jake Leingang, made a defendant.

The case was tried in 1964, and there was a judgment (November 19, 1964) against the subcontractor, St. John, for $139,431.20, with costs in the amount of $321.80, but the action against the general contractor, Leingang, was dismissed. (From the proceeds of the fire insurance carried by the subcontractor, $81,843 was paid on the judgment, leaving a balance of $57,588.20, which with the costs made a total unpaid judgment of $57,910.)

On the appeal by White Pass from the dismissal of Leingang, this court held that the judgment should also have been entered against the general contractor. (*See White Pass Co. v. St. John,* 71 Wn.2d 156, 427 P.2d 398 (1967).)

In that opinion it was pointed out, at page 160, that:

The amount of appellant's loss in this case has become liquidated as a result of the judgment against the subcontractor in an action in which the respondent was a defendant. If the judgment had been given against the respondent, it would necessarily have been in the same amount. Consequently, there is no uncertainty as to the amount of damage for which the appellant has not been compensated. It is the difference between $81,843 and the

amount of the judgment. [This would be the amount indicated above, *i.e.*, $57,910.]

The remittitur on that appeal was dated May 22, 1967 and was received in the Superior Court for Yakima County on May 23, 1967.[2]

On July 25, 1967 the trial court entered a judgment on the remittitur, on that appeal, which recited that White Pass had a judgment of $57,588.20 plus costs of $321.80, plus an additional $2,037.65 costs on the appeal taxed in the Supreme Court, or a total sum of $59,947.65, less the sum of $50,000 paid on the judgment by Leingang on June 9, 1967. The judgment as so computed was for $9,947.65, with interest from June 9, 1967 until paid.

White Pass has appealed from that judgment and makes the sole contention that it was entitled to interest at the rate of 6 per cent on the items of $57,588.20 plus costs of $321.80 ($57,910) from the date of the judgment, November 19, 1964 to June 9, 1967. The issue, stated somewhat differently, is whether Leingang, the general contractor, is liable for interest from the date the judgment was entered against W. Scott St. John, the subcontractor (November 19, 1964 on which date a judgment should have been entered against Leingang), or from the later date of June 9, 1967.[3]

White Pass, the appellant, urges that the damages (for which we have held Leingang to be liable) became liquidated (*i.e.*, certain in amount) upon the entry of judgment against the subcontractor (November 19, 1964), on which date judgment should also have been entered against the

---

[2]This remittitur was premature, but it was agreed by the parties that it need not be recalled.

[3]We are not certain as to why the trial judge selected the date of June 9, 1967 as the date from which the judgment entered July 25, 1967 should draw interest. However, the remittitur on the first appeal was sent down prematurely, as indicated in note 2, and the appellant's brief states that the parties had agreed on June 9, 1967 as the date on which the remittitur should have been filed in the Superior Court for Yakima County. It was also the date on which Leingang made his $50,000 payment on the judgment.

general contractor (Leingang), and interest should run from that date.

Leingang, the respondent, urges that there was never any judgment against him until the judgment on the remittitur; therefore there was never any amount that he was obligated to pay to stop the running of interest until the remittitur on the first appeal was received by the Superior Court for Yakima County.

■ This argument overlooks the whole gist of our decision on the first appeal, *i.e.*, that the general contractor was responsible for the tort of his subcontractor and his vicarious liability attached at the time the liability of his subcontractor attached, and in the same amount.

When the damages became liquidated as to the subcontractor on November 19, 1964, they became liquidated as to the general contractor, and we so stated in the previously quoted portion of the decision on the first appeal. Even though a judgment had not yet been entered against him, the ultimate determination was that it should have been.

Actually in this type of case (fire loss occasioned by a tortious act, and similarly in conversion of property) the present trend is to allow the interest to run from the date the loss is sustained, rather than from the date of judgment. *See* Annot. 36 A.L.R.2d 337, § 64 (1954), supplementing 96 A.L.R. 211 (1935). The reasoning of these cases is that interest must be allowed to adequately compensate the owner of the property for the loss of the use of his property during the interim between the time the fire occurs or the property is converted, and the time when the property is restored or its value paid.

Understandably, both because of the delay in making Leingang a party, and because prior case law indicates that in this state no interest is allowed on unliquidated claims for property destroyed while rightfully in the defendant's possession,[4] White Pass has claimed interest only from the

---

[4]Our prior case law was reviewed in *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955). We there took cognizance of the annotation to which we have referred (36 A.L.R.2d

date on which the damages became liquidated, *i.e.*, the judgment against St. John, November 19, 1964.

We are in accord with the contention by White Pass that interest should run against the general contractor as a tort-feasor at least from the time that the damages became liquidated. *Jellum v. Grays Harbor Fuel Co.*, 160 Wash. 585, 295 P. 939 (1931).

■ Liquidation is the act of "settling or making clear, fixed, and determinate that which before was uncertain or unascertained." Black's Law Dictionary 1080 (4th ed. rev. 1968). The damages in this case became liquidated by the best possible method by which an unliquidated tort claim can become liquidated, that is, by the determination, finding and judgment of a trial court upon conflicting evidence.

Respondent has argued strenuously that we should affirm the trial court on the basis that its judgment on the remittitur conformed to the remittitur from this court, and as such no appeal should lie. In particular, respondent claims that since neither our opinion nor the remittitur made any mention of interest, there should be no interest awarded.

■ We answered a similar contention in *Yarno v. Hedlund Box & Lumber Co.*, 135 Wash. 406, 237 P. 1002 (1925), by saying, at page 407:

> An examination of the previous opinion will disclose that the question of interest was not there raised nor considered. Indeed, it would hardly seem necessary that the opinion of this court should make any reference thereto, inasmuch as interest is provided for in the statute . . .
>
> . . .
>
> Clearly, nothing being said in the opinion with reference to interest, the most that appellant [respondent here] can contend for is that it is an open question.

The cause is remanded to the Superior Court for Yakima County with instruction to modify the judgment entered on the remittitur to include the interest on the unpaid portions

337, § 64 (1954), supplementing 96 A.L.R. 211 (1935)), and said that the rule allowing damages from the date of conversion was salutary and was being applied by our courts except where the damages were unliquidated.

of the judgment of November 19, 1964, from that date to June 9, 1967, subject, however, to a determination by the superior court of the effect of the release entered into on March 12, 1970, and satisfaction of judgment executed by White Pass on March 31, 1970, on the rights of the parties with respect to the claimed interest.

The foregoing opinion was prepared by Justice Matthew W. Hill except the portion of the opinion concerning the release and satisfaction. Their existence was unknown at the time the opinion was originally drafted. It is adopted by the undersigned.

HUNTER, C. J., ROSELLINI, HAMILTON, HALE, NEILL, and McGOVERN, JJ.

September 8, 1970. Petition for rehearing denied.