[No. 938-2. Division Two. October 30, 1973.]

CHRISTINA A. LITTS *et al., Appellants,* v. PIERCE COUNTY, *Respondent.*

*Edwin J. Wheeler* and *R. G. Hutchins* (of *Witt, Hutchins, Plumb & Wheeler*), for appellants.

*William L. Holder* and *William R. Hickman* (of *Reed, McClure, Moceri & Thonn*), for respondent.

ARMSTRONG, J.—This is an appeal from an order of dismissal with prejudice, entered in a tort action after defendant's challenge to the legal sufficiency of the evidence at the close of plaintiff's case.

The event giving rise to this litigation occurred on April 18, 1969. At approximately 11 p.m., Christina Litts was the sole passenger in a vehicle being driven west by Guy Ramirez on Military Road in Pierce County. While attempting to turn left at the entrance to Spanaway Park, the Ramirez vehicle was struck on its right side by a vehicle being driven east on Military Road by Patrick T. Roche. The collision which occurred caused substantial, grave and permanent injuries to Christina Litts, rendering her an incompetent person. Her guardian, together with her parents suing in their own behalf, commenced this action seeking damages from defendant, Pierce County. The cause of ac-

tion against the county was based upon alleged negligence for failure to properly mark the intersection where the accident occurred, or to provide illumination at the intersection.

This court previously reversed the granting of a motion to dismiss the same case, holding that the "release" of Mr. Ramirez pursuant to a settlement with his liability insurer did not bar further proceedings against the county. *Litts v. Pierce County*, 5 Wn. App. 531, 488 P.2d 785 (1971).

The primary issue raised by this second appeal is whether the trial court erred in ruling inadmissible the testimony of four of plaintiff's expert witnesses. We find no error in the exclusion of the testimony. Another issue raised is whether the trial court improperly dismissed the case on the ground that the conduct of Mr. Ramirez, the driver of the car in which Christina Litts was a passenger, was the sole proximate cause of the accident. We hold that the dismissal was proper.

Two of the expert witnesses were called to the stand and permitted to give testimony, though not in the jury's presence. By stipulation, affidavits of the others were preserved in the record.

One of plaintiff's expert witnesses was a highway engineer and accident reconstruction specialist. His testimony pertained to a reconstruction of the point of impact based on principles of mathematics and physics applied to measurements taken by an investigating patrol officer. He also testified concerning his opinion as to whether a highway engineer exercising ordinary prudence would have designed the intersection using different pavement markings and using illumination.

The affidavit of a second expert witness, an electrical engineer, indicated that his testimony would have been that in his opinion, the intersection should have been illuminated.

A third expert witness, a practicing opthalmologist, offered testimony that Ramirez had, since birth, a myopic condition which interferes with depth perception at times

of darkness, and that this defect is not corrected by glasses. The opthalmologist concluded that at the time of the accident Mr. Ramirez could not accurately determine the distance from him of an approaching automobile, nor determine precisely where he was in relation to the intersection; but that he could have properly judged the distance and the proper place to turn if the intersection had been lighted.

The fourth expert, an optometrist, would have testified that afer examining Mr. Ramirez under both static and field conditions, it was his opinion that Mr. Ramirez would have been able to see well enough to determine the location of his own vehicle within the intersection, and the distance from him of the automobile which collided with him, had the intersection been illuminated.

In reviewing the trial court's exclusion of plaintiff's expert testimony, we note that there are numerous cases discussing this issue. For example, the Supreme Court has commented that "The admissibility of expert opinion testimony has been and continues to be a troublesome problem." *Ward v. J.C. Penney Co.*, 67 Wn.2d 858, 860, 410 P.2d 614 (1966). However, a review of the cases in this area discloses that at least the following propositions appear to be well established: First, the admissibility of expert testimony rests within the discretion of the trial court. The trial court's ruling should not be overturned absent an abuse of discretion. *Crowe v. Prinzing*, 77 Wn.2d 895, 897, 468 P.2d 450 (1970). Second, the court should make a determination whether the use of opinion testimony will be likely to mislead the trier of fact to the prejudice of the objecting party. *Twidwell v. Davidson*, 54 Wn.2d 75, 83, 338 P.2d 326 (1959); Model Code of Evidence Rule 401(b) (1942). Finally, the purpose of opinion evidence is to assist the trier of fact in correctly understanding matters not within common experience. If the issue involves a matter of common knowledge about which inexperienced persons are capable of forming a correct judgment, there is no need for expert opinion. *Myers v. Harter*, 76 Wn.2d 772, 781, 459

P.2d 25 (1969); *Gerberg v. Crosby*, 52 Wn.2d 792, 795, 329 P.2d 184 (1958); *Parris v. Johnson*, 3 Wn. App. 853, 479 P.2d 91 (1970).

On the facts in this case, we are satisfied that the trial court did not abuse its discretion in excluding the expert testimony. The record discloses that Mr. Ramirez was familiar with the intersection at the entrance to Spanaway Park. He had lived in the general area previously. He had been to the park and used the same entrance before. He had traveled Military Road at night. On a prior occasion, he had used this particular intersection to swing around and go back the other way.

Mr. Ramirez testified that he had been a truck driver while in the army and had had no problems driving then. At the time of the accident he was employed as a warehouseman running a forklift, and he testified that he had no difficulty judging distance. There were no restrictions on his license with regard to glasses, and within a month after the accident he passed his eye test for a driver's license without glasses, although he was wearing glasses at the time of the accident. He still drives at night and testified that he can see at night.

The collision occurred when Mr. Ramirez attempted to make a left turn at the entrance to Spanaway Park. The weather that night was "misty." Despite the light rain, he stated that he saw the lights of the oncoming car at all times prior to the accident. However, he was not paying much attention to traffic, the radio was on, and he and Christina Litts were talking. The evidence indicates that Mr. Ramirez had been drinking, but the opinion of the investigating officer was that he was not drunk. There was nothing which prevented him from stopping prior to making the left-hand turn. He further testified that he saw the traffic lines on the surface of the road, and was familiar with the painted lines. He saw the left-turn lane and went into it. Perhaps the most concise statement of what happened is the testimony of Mr. Ramirez describing the accident, as follows:

Q All right. Now, would you tell us in your own words, as best you can recall, what happened with respect to this collision?

A I was going down the road and was going to turn around there where those two islands are, and got hit, that's all.

After the accident Mr. Ramirez admitted to at least two witnesses that the accident was his "fault."

Given the facts in this case discussed above, we are of the opinion that it was well within the discretion of the trial court to determine that the question of whether the oncoming car could have been seen, and whether the proper turning operation could be perceived under the extant circumstances, was a matter of common observation and inference, rather than of scientific judgment, and therefore did not require expert evidence. *Myers v. Harter, supra; Gerberg v. Crosby, supra; see* 31 Am. Jur. 2d *Expert and Opinion Evidence* § 165 (1967).

■ Not only was the expert testimony unnecessary, it was within the discretion of the trial court to conclude that the testimony was speculative and would have had a strong tendency to mislead the trier of fact. *Twidwell v. Davidson, supra;* Model Code of Evidence Rule 401 (b) (1942). We find no abuse of discretion in excluding the expert testimony.

■■ Plaintiff contended that the trial court erred in dismissing the action at the close of plaintiff's case. The trial court granted defendant's motion to dismiss, concluding that on the evidence presented by the plaintiff, 12 jurors of reasonable mind could not come to any other conclusion but that no conduct of the defendant, Pierce County, constituted a proximate cause of the injuries to the plaintiff. We agree with the trial court. When the operative facts are undisputed, and the inferences therefrom are plain and not subject to reasonable doubt or difference of opinion, the question of proximate cause becomes a question of law rather than a question of fact. *Foster v. Bylund,* 7 Wn. App. 745, 503 P.2d 1087 (1972); *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964). Further, if an event would

have occurred regardless of defendant's conduct, that conduct is not a proximate cause of plaintiff's injury. *Ross v. Altvater*, 72 Wn.2d 63, 431 P.2d 701 (1967); *Stoneman v. Wick Constr. Co.*, 55 Wn.2d 639, 349 P.2d 215 (1960). We hold that the trial court properly dismissed the cause of action on the ground that the conduct of Mr. Ramirez, the driver of the automobile, was the sole proximate cause of plaintiff's injury. *Foster v. Bylund, supra.*

 Plaintiff argued that the trial court erred in granting defendant's motion to strike plaintiff's cause of action based on strict products liability. Plaintiff cites no authority applying this principle of strict liability to allegedly defective public ways, and we know of none. Aside from the proximate cause problem discussed above, plaintiff's contention is without merit, since the rule of strict liability is an economic theory applicable to persons engaged in the business of selling products for use or consumption. Restatement (Second) of Torts § 402 A, comments *c* and *f* at 349, 350 (1965).

Although our holding is adverse to the position urged by the plaintiff, we commend counsel for plaintiff for his most thorough and professional advocacy, in both this and the prior appeal, on behalf of a plaintiff who has suffered such grave and catastrophic injuries.

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.