[No. 44185. En Banc. January 5, 1978.]

THE BOEING COMPANY, *Respondent,* v. THE STATE OF WASHINGTON, *Defendant,* THE CITY OF AUBURN, *Appellant.*

*Skeel, McKelvy, Henke, Evenson & Betts,* by *Paul D. Carey* and *Frederick V. Betts,* for appellant.

*Stafford, Frey & Mertel,* by *John G. Cooper, Jack P. Scholfield,* and *A. Richard Dykstra,* for respondent.

ROSELLINI, J.—This is an appeal by one of the defendants, the City of Auburn, from a jury award and judgment in favor of the respondent, The Boeing Company, in the amount of $374,301.32 for damage to two jet engines. The damage occurred when the truck and trailer upon which they were being carried was driven through a 12–foot underpass on "A" Street, S.E., in Auburn, also known as

State Highway 167. The top of one engine struck the underside of the underpass, and the other engine was knocked to the roadway.

The driver of the vehicle, who was not an agent or employee of the respondent, admitted that he observed signs which warned of the low clearance of the underpass and could have stopped his vehicle, but because he had underestimated the height of his load he thought it was not in danger.

The contract for delivery of the engines had a clause which limited the liability of the carrier. The respondent sued the City and the State for the difference between the amount of its loss and the amount paid by the carrier. The jury exonerated the State but found the City guilty, either of maintaining a nuisance[1] or of negligence, which was a concurring proximate cause of the accident. This court granted the City's application for direct review pursuant to RAP 4.2(a)(4).

It was the appellant's theory in this action that the driver's negligence, in failing to ascertain the height of his load, was the sole proximate cause of the accident. The respondent's theory on the other hand was: that the clearance of the underpass was so low as to constitute an inherently dangerous condition, that past experience had shown that the warning signs were not adequate to prevent accidents, and that the City should have either rerouted truck traffic or invented and installed some device which would call a driver's attention to the fact that his load was too high to clear the opening. According to its theory, had one of these alternatives been adopted, the accident would have been prevented. In the absence of such a warning device or rerouting, according to the respondent's theory, the appellant had a duty to restructure the underpass, increasing the clearance to a height which would accommodate vehicles

---

[1]The appellant does not challenge the applicability of the nuisance theory, and no error is assigned with respect to it. We voice no opinion upon the propriety of the submitting of that issue to the jury.

having the maximum height permitted by law—which is 13 feet 6 inches.

It is the duty of a municipality to exercise ordinary care in the repair and maintenance of its public highways, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety. *Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967). The court instructed the jury to this effect. It further instructed that, if the jury found that the appellant was negligent, but that the proximate cause of the alleged harm was a later independent intervening act of a person not a party to the case, which the appellant in the exercise of ordinary care could not reasonably have anticipated as likely to happen, the appellant's original negligence was superseded by the intervening act, and was not the proximate cause of the alleged harm. However, the court instructed, if in the exercise of ordinary care, the appellant should reasonably have anticipated the intervening act, that act did not supersede the appellant's original negligence or break the chain of proximate causation.

The appellant objected to this instruction, not on the ground that it was an incorrect statement of the applicable law, but upon the ground that the evidence conclusively showed that the negligence of the driver was the sole proximate cause of the accident. If there was competent evidence upon which the jury could find that the appellant was negligent, and the intervening negligence of the driver was foreseeable, the instruction is the law of the case.

The appellant contends there was no competent evidence to this effect. The respondent's evidence tended to show that, while such devices were not in common use at the time of this accident and were not commercially available, it would have been a fairly simple matter, employing ordinary engineering knowledge, to construct a photoelectric cell device or an overhanging chain or tube structure which would call a driver's attention to the fact that his vehicle could not clear the underpass. The employment of such a

device had been proposed by the chief of police in 1966. There was other testimony showing that there had existed an awareness that a positive warning system was needed.

The appellant contends that, because such a system was not in common use and was not commercially available before this accident, to require a city to exercise ingenuity in conceiving such a system is to impose a duty of extraordinary care upon it. It cites *Kilbride v. Carbon Dioxide & Magnesia Co.*, 201 Pa. 552, 51 A. 347 (1902), and other cases holding that negligence is not established by showing that any injury might have been prevented by the use of some device that has not yet been generally adopted.

■ We acknowledge this to be the general rule. However, there are extraordinary situations which may call for extraordinary measures in the exercise of reasonable care. In *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963), a suit brought for injuries resulting from an accident on an escalator, the plaintiff sought to elicit from her expert witness testimony concerning automatic stopping devices which were available at the time of the accident, but were not standard. An objection was sustained. Because no offer of proof had been made, we were unable to consider an assignment of error directed to this ruling. However, we said at page 193:

> We would be critical of a perfunctory refusal to consider new devices merely because "they were not standard" with the various manufacturers. Although the standard practice is usually a reasonable and prudent one, and its tests are always persuasive, yet the courts, in the final analysis, must be prepared to say when additional precautions are imperative.

As stated in 65 C.J.S. *Negligence* § 84, at 1019 (1966):

> Due care requires that the precautions taken by a person responsible for a dangerous place or instrumentality be commensurate with the dangers to be apprehended, and be sufficient under ordinary circumstances to prevent accidents and injuries; but except in extraordinary circumstances the law does not require that one employ the safest of all possible procedures in order to avoid tort

liability. Accordingly, what [precautions] are reasonable must depend on the circumstances of the particular case.

Here, the respondent's evidence showed a past history of frequent accidents in spite of the warning signs posted. It further showed the appellant's awareness of the need for a more effective warning system and that in other similar circumstances governmental bodies had devised warning systems to meet the problem. This evidence was sufficient to take to the jury the question whether the appellant exercised reasonable care under the circumstances. The jury could reasonably conclude that the situation called for the exercise of some ingenuity in the solution of the problem presented by this substandard underpass—either the invention and construction of an adequate warning system, the rerouting of truck traffic, or the restructuring of the highway to correct the defect.

Nevertheless the appellant urges here, as it did in the trial court, that the negligence of the driver was the sole proximate cause of the accident. The argument discounts entirely the respondent's evidence tending to show that the situation called for either a warning which would alert the driver to the fact that his vehicle would not clear the underpass, a rerouting of truck traffic, or a restructuring of the underpass. If the jury found, as it apparently did, that in the exercise of reasonable care, one of these actions was necessary, it was entitled to find further that the failure to take such action was a proximate cause of the damage to the respondent's property. The jury was properly instructed upon the definition of proximate cause. The question was one for its determination. As we said in *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975), if two individuals commit independent acts of negligence which concur to produce the proximate cause of an injury to a third person, they are to be regarded as concurrent tort–feasors, and each is liable as if solely responsible for the injury.

It is true that, as the Court of Appeals, Division Two, said in *Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973), a case strongly relied upon by the appellant,

when the operative facts are undisputed and the inferences therefrom are plain and not subject to reasonable doubt or differences of opinion, the question of proximate cause becomes a question of law, rather than a question of fact. In that case, which was one involving an intersection collision in which the driver of one vehicle failed to yield the right–of–way to an oncoming car which he observed approaching at all times, the plaintiff sought to hold the county liable for failure to properly light the intersection. Because the driver was shown to have been fully aware of the approaching vehicle, it was held that his negligence in turning in front of it was the sole proximate cause of the accident.

That case differs from this in that there, there was nothing which the county could have done which would have prevented the accident, whereas here, if the respondent's evidence is accepted, there were several measures which could have been taken to successfully prevent accidents of this type. Whether the failure to take one of such actions was a proximate cause of the occurrence was a question for the jury.

Error is assigned to the admission of evidence showing the number of accidents which had occurred at this underpass, both before and after the date of the incident giving rise to this action. It is contended that the respondent did not show that the circumstances of each of these accidents were similar to those involved in this case. It appears that the respondent had to rely upon the appellant's records for evidence of past occurrences, and those records did not reveal the nature of the signs which were in place at the time of each accident, the time of day or night, or the direction in which the vehicle involved was traveling. We do not think these defects were sufficient to render the evidence inadmissible for the purpose for which it was offered. It was designed to show that a dangerous condition existed at the underpass. Other evidence showed that the appellant understood that all or most of these accidents were of the type experienced by the respondent's carrier.

The appellant might properly object that evidence of subsequent accidents was not admissible to prove that the appellant had notice of the dangerous condition. However, the evidence was not offered for that purpose. The jury was instructed that all of the evidence of other accidents was admitted solely for the purpose of demonstrating the nature of the condition of the underpass and should be considered only for that purpose. The appellant does not dispute its admissibility for that purpose.

The appellant urges that its motions to dismiss should have been granted because, under its interpretation of RCW 47.24.010 and .020, it had neither the right nor the duty to increase the vertical clearance at the underpass. The appellant does not show that this theory was argued before the trial court in support of the motions. Without a showing that the contention was presented to the court below, it cannot be considered here. *State v. O'Connell,* 83 Wn.2d 797, 523 P.2d 872 (1974). Furthermore, an instruction requested by the appellant and given by the court sets forth the respondent's claim that both the City and the State were negligent in failing to increase the clearance at the underpass. Consequently, the appellant cannot be heard to complain that the matter was submitted to the jury.

While error is assigned to an instruction which the court gave, advising the jury that the appellant had stipulated that it was feasible to increase the clearance, the only reason given for the exception taken to the instruction was that feasibility was not an issue. There was no suggestion that the stipulation was not material to any issue in the case. Feasibility was obviously material, since it bore upon the issue of the appellant's duty to increase the clearance of the underpass. If it was the appellant's theory that it had no such duty, under the statutes, it should have advised the court of that theory when it took its exception. Not having done so, the appellant cannot now be heard to complain that this ground of liability was improperly submitted to the jury.

It is next argued that the appellant discharged its duty to warn of the hazard existing at the underpass because, as it alleges, it "substantially complied" with RCW 46.44.020 in regard to the placement of warning signs. As in the case of the preceding contention, this theory is urged for the first time on appeal, and is not properly before us for consideration. While the statute was quoted in a trial memorandum, the appellant did not choose to rely upon it but rather focused argument upon the contention that the negligence of the driver was the sole proximate cause of the accident. The court was never asked to rule that the appellant had substantially complied with the requirements of the act or to submit the question to the jury.

Error is assigned to the court's refusal to declare a mistrial because of two reprinted Reader's Digest articles which were found on a table in the jury room. There was no showing that any of the jurors had actually seen or read these articles. They dealt with government regulation of the transport industry. Although the appellant declares that the articles were prejudicial, it does not advise us of any statement contained in them which could have unduly influenced the jury. Upon bare allegations of prejudice, we cannot say that the trial court abused its discretion in denying the motion.

Error is assigned to the overruling of an objection to a question asked one of the appellant's witnesses on cross-examination. The witness, a railroad employee, was asked if there had been any major revisions in the railroad overpass. After the appellant's objection was overruled, the question was rephrased and limited to the period prior to the accident. It is contended that the question itself was prejudicial, even though it was answered in the negative, because it implied that changes had been made subsequently and this suggestion must have influenced the jury in deciding that restructuring was feasible. Since feasibility was admitted, and the existence of a duty to restructure was a question presented to the jury without adequate challenge by the appellant, any inference which might have been derived

from the question put to the witness, with respect to the feasibility of alterations, was merely cumulative evidence. The admission of such evidence does not constitute reversible error. *Feldmiller v. Olson,* 75 Wn.2d 322, 450 P.2d 816 (1969).

While we, had we been sitting as jurors, might well have reached a different conclusion regarding the responsibility of the appellant, under the standard of reasonable care, we cannot say upon the record that the verdict was unsupported by the evidence, and it is not so contended. Finding no prejudicial error in the trial of the case, we must affirm the judgment entered on the verdict.

In a cross appeal, the respondent suggests that the trial court committed error in denying its request that interest be allowed from the date the amount of damages was established. Since the amount of the damage, being the cost of repair, was undisputed, the respondent says, the claim was liquidated; therefore, interest should be allowed from the date the cost of repair was determined. Cases which it cites from this jurisdiction are: *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968) (a breach of contract action); *Blake v. Grant,* 65 Wn.2d 410, 397 P.2d 843 (1964) (a trespass action); *Grays Harbor County v. Bay City Lumber Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955) (a trespass action); and *White Pass Co. v. St. John,* 78 Wn.2d 188, 470 P.2d 548 (1970) (an action for fire damage involving negligence of contracting parties, in which interest on a judgment subsequently entered against a contractor was allowed from the date of a judgment against a subcontractor, on the theory that the judgment should have been entered against the contractor on the same date).

The last cited case did not allow interest from a date prior to judgment, although the opinion noted a trend in that direction with respect to fire damage as well as conversion cases, citing *Interest on damages for period before judgment for injury to, or detention, loss, or destruction of, property,* Annot, 36 A.L.R.2d 337, § 64 (1954), supplementing, *Interest on damages for period before judgment*

*for injury to, or detention, loss, or destruction of, property,*
Annot., 96 A.L.R. 18, 211 (1935).

 None of these cases stands for the proposition that interest can properly be awarded from a date prior to judg-ment in a case of ordinary negligence. In each instance where prejudgment interest was awarded, the defendant was guilty of an intentional tort or a breach of contract. A rule allowing prejudgment interest in a negligence action would have a significant effect upon the defendant's liability. Assuming that it is within the proper province of the court to adopt a rule allowing prejudgment interest, such a step should be taken only after a thorough study of its probable impact and the conflicting interests and policy considerations involved. The court did not err in denying the respondent's application for such interest.

The judgment is affirmed.

WRIGHT, C.J., and HAMILTON, DOLLIVER, and HICKS, JJ., concur.

UTTER, J. (dissenting)—The pivotal issue in this case was whether a truck driver who admittedly did not know the height of his load but had "eyeballed it" at "not more than 10 foot" when in fact it exceeded the clearly marked low clearance warning of 12 feet is, as a matter of law, the sole proximate cause of the damage to his load. The majority recognizes that when the operative facts are undisputed and the inferences therefrom are plain and not subject to reasonable doubt or differences of opinion, the question of proximate cause becomes a question of law, rather than a question of fact. *Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973). It attempts to distinguish the holding of that case by stating the failure of the City to take measures to nonetheless warn the driver of the fact that his load was too high was a duty imposed on the City because the driver's negligence was a foreseeable intervening cause.

I cannot agree. The undisputed facts in this case show the warning sign correctly stating the height of the overpass

454

was observed by the driver in sufficient time to stop and that he continued on only because he had incorrectly guessed the height of his load. As a matter of law this court should hold no duty is imposed on the City under the facts of this case where the sole proximate cause of the accident was the driver's failure to accurately ascertain the height of his load.

STAFFORD, BRACHTENBACH, and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing denied March 28, 1978.