HAROLD HANSEN, ET AL, *Appellants,* v. JAMES ROTHAUS,
*Defendant,* FRED A. TUCKER, ET AL, *Respondents.*

*Douglas M. Fryer* and *Jeffrey L. Jernegan* (of *Mikkelborg, Broz, Wells, Fryer & Yates*), for appellants.

*Lane, Powell, Moss & Miller,* by *Andrew L. Seiple,* for respondent Fred A. Tucker & Co.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Allan H. Baris* and *Nancy K. McCoid,* for respondent Inapro.

*Keith L. Kessler,* amicus curiae for appellants.

BRACHTENBACH, J.—The issue is whether appellant vessel owners are entitled to prejudgment interest on agreed damages. The vessel owners sued respondent insurance brokers for damages allegedly suffered as a result of the brokers' failure to provide them with insurance as agreed or as represented. The parties entered into an agreement settling all claims except the vessel owners' entitlement to prejudgment interest on the agreed damages. The trial court ruled that the vessel owners' claims were ordinary negligence claims for which prejudgment interest is not awardable. Upon direct review, we affirm in part on other grounds and reverse in part.

The defendants, Fred A. Tucker (Tucker), Fred A. Tucker & Company, Inc. (Tucker Co.), and James Rothaus were insurance brokers in Washington. Rothaus' insurer, the Insurance Company of North American and its subsidiary Inapro (collectively Inapro), agreed to pay some of the stipulated damages. Inapro has been substituted for Rothaus as the real party in interest.

The seven claims involved here are identified by the names of the vessels. In the *American Eagle* and *American Star* claim, the vessel owners sought return of a premium paid to Rothaus for insurance with Lloyd's of London.

Rothaus was never able to provide a policy or confirm coverage. Tucker and Tucker Co. stipulated to liability for damages in the amount of the premium paid.

In the *Ocean Cape* claim, the vessel owner authorized Tucker to place insurance. The policy issued by Tucker Co. did not meet specified criteria. Nonetheless, Tucker Co. collected the full premium on the policy from a financing company with which the owner had an insurance premium financing contract. The owner made two payments to the financing company, then canceled its order for insurance with Tucker Co. The owner made no further payments to the financing company. Tucker and Tucker Co. stipulated to liability for damages in the amount the owner paid to the financing company, and agreed to indemnify the owner for any liability to the financing company.

In the *Steel Fin* claim, the vessel owner paid Tucker for a policy insuring the vessel. The *Steel Fin* sank and was a total loss. No insurance company ever paid for the loss. Tucker and Tucker Co. stipulated to liability for the "insured agreed value" of the *Steel Fin,* less the amount the owner bid for salvage rights.

In the *Vestfjord*–hull claim, the vessel owner purchased hull and machinery insurance through Tucker Co. A rogue wave struck the *Vestfjord,* causing damage to the vessel. Repairs were made. An average adjuster adjusted the resulting insurance claim. (An average adjuster is an adjuster with special knowledge of marine matters, equipment and construction, who determines the fair amount of a loss of ship, cargo or freight, and apportions the loss among the owners or insurers. L. Buglass, *Marine Insurance and General Average in the United States* 115 (2d ed. 1981).) Four of the companies underwriting the policy obtained through Tucker Co. were insolvent or denied placement, thereby leaving an unpaid balance on the claim. Tucker and Tucker Co. stipulated to liability for the unpaid balance.

In the *Vestfjord*–Doty claim, the owner purchased marine liability insurance (protection and indemnity insur-

ance (P&I)) from Rothaus. A *Vestfjord* crew member sustained injuries on two separate occasions. When the resulting claim for maintenance, cure and unearned wages was not paid, the crew member filed suit against the vessel owner and the *Vestfjord*. That suit was settled with the owner paying maintenance, medical expenses (cure), and a $50,000 settlement. Inapro agreed that the settlement was reasonable. The vessel owner incurred costs of defending the suit brought by the crew member. Tucker and Tucker Co. stipulated to liability for the maintenance, medical expenses, and settlement the owner paid, and for his costs of defense.

In the *Sea Comber* claim, the vessel owner purchased a hull insurance policy from Tucker. The *Sea Comber* sustained damages when it struck a log. The marine surveyor hired by Tucker approved repairs. The policy underwriter is in liquidation, and the owner has not been paid for the cost of the repairs. The owner used his own funds plus money he borrowed to pay for repairs. One repair bill remains unpaid. The owner has incurred interest charges on the borrowed money and on the unpaid bill. Tucker and Tucker Co. stipulated to liability for damages in the amount of the repairs.

In the *Sea Star* claim, several persons are the vessel owners. One owner ordered a P&I policy through Rothaus. The underwriters were never identified. When a crew member was injured, respondents appointed an adjuster. After the underwriters did not respond to the claim, the *Sea Star* owners paid the crew member $22,500 for maintenance, medical bills, and unearned wages. Tucker and Tucker Co. stipulated to liability for this amount.

In each of the seven claims Tucker and Tucker Co. stipulated to liability for prejudgment interest on the agreed damages to the date of the settlement agreement, if prejudgment interest is awardable. In the *Sea Comber* claim, Tucker and Tucker Co. also stipulated to liability for the interest charged to the vessel owner on the loan and the unpaid repair bill, if such interest is awardable. In each

case, the vessel owners seek additional prejudgment interest for the period of time between the date of the settlement agreement and the date judgment was entered.

Respondents argue that prejudgment interest is not awardable on damages in ordinary negligence actions, relying upon *Boeing Co. v. State,* 89 Wn.2d 443, 572 P.2d 8 (1978). Appellants urge us to decide whether prejudgment interest is awardable on these claims based upon whether the claims are liquidated or unliquidated. Appellants alternatively contend that their claims are contractual claims and therefore *Boeing* is inapplicable. Finally, the parties urge opposing views as to whether certain of the claims are liquidated or unliquidated.

▮ The nature of the claim, not its characterization as sounding in contract or negligence, decides the issue. We reiterate the court's established analysis, and hold that whether prejudgment interest is awardable depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim. *See, e.g., Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968); *Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 273 P.2d 652 (1954); *Parks v. Elmore,* 59 Wash. 584, 110 P. 381 (1910). The rule is stated:

> [I]nterest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier,* at 32.

A "liquidated" claim is a claim "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier,* at 32 (citing C. McCormick, *Damages* § 54 (1935)). A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated. *Prier,* at 33 (citing C. McCormick, *Damages* §

54 (1935)).

An unliquidated claim, by contrast, is one

"where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."

(Italics omitted.) *Prier,* at 33 (quoting C. McCormick, *Damages* § 54 (1935)).

██ Prejudgment interest awards are based on the principle that a defendant "who retains money which he ought to pay to another should be charged interest upon it." *Prier,* at 34. The plaintiff should be compensated for the "use value" of the money representing his damages for the period of time from his loss to the date of judgment. *Mall Tool Co. v. Far West Equip. Co., supra* at 177; *see also Grays Harbor Cy. v. Bay City Lumber Co.,* 47 Wn.2d 879, 891, 289 P.2d 975 (1955). A defendant should not, however, be required to pay prejudgment interest in cases where he is unable to ascertain the amount he owes to the plaintiff. *Prier,* at 34. *Accord, Ferber v. Wisen,* 195 Wash. 603, 610, 82 P.2d 139 (1938); *Pearson Constr. Corp. v. Intertherm, Inc.,* 18 Wn. App. 17, 20, 566 P.2d 575 (1977).

This court has consistently applied the liquidated–unliquidated analysis to both contract and tort claims. *See, e.g., Wright v. Tacoma,* 87 Wash. 334, 151 P. 837 (1915) (amount alleged due on contract for public improvements; claim held unliquidated, prejudgment interest not allowed); *Phifer v. Burton,* 141 Wash. 186, 251 P. 127 (1926) (action for damages for alleged negligent sinking of houseboat; damages held unliquidated, prejudgment interest not allowed); *White Pass Co. v. St. John,* 78 Wn.2d 188, 470 P.2d 548 (1970) (action to recover for damages caused by subcontractor's negligence; following appeal of dismissal of general contractor, claim against general contractor held liquidated from date of judgment against subcontractor).

Then, in *Boeing,* this court said that a rule allowing prejudgment interest in ordinary negligence cases should be

adopted "only after a thorough study of its probable impact and the conflicting interests and policy considerations involved." *Boeing,* at 453. In *Boeing,* the Boeing Company sued the City of Auburn, alleging that the City negligently failed to either reroute traffic around a low underpass or provide some device calling a driver's attention to a too-high load. Two Boeing jet engines were damaged when the tractor–trailer on which they were carried failed to clear the underpass. This court upheld the jury award and judgment in favor of Boeing, but denied Boeing's request for pre-judgment interest.

█ As suggested by *Boeing,* we have considered the numerous arguments ably presented by counsel for the parties. It is apparent that most of these arguments apply equally well whether a particular claim sounds in contract or negligence. Thus, most of the arguments serve to emphasize as artificial any distinction based upon the characterization of the claim. Some of the respondents' arguments, however, are specifically related to whether prejudgment interest is awardable on liquidated damages in negligence claims. We address these in turn.

Contrary to respondents' first argument, that *Boeing* resolves the question here, we find that our opinion there did not foreclose prejudgment interest awards in negligence actions. *Boeing* simply called for further study. *Boeing* is consistent with the proposition that, as a practical matter, liquidated damages would be most unusual in the context of an "ordinary negligence" action.

Respondents also argue that any significant changes in prejudgment interest law should be made by the Legislature. Because the liquidated–unliquidated analysis has long been the law in Washington, we do not perceive our decision here to constitute a significant change in the law.

Respondents argue that prejudgment interest operates to deter wrongdoing, and should not be awarded in "ordinary negligence" cases where no deterrent effect would result. This argument misstates the basis for awards of prejudgment interest, which is to compensate the plaintiff for the

use value of the money representing liquidated or determinable damages. Prejudgment interest is not a penalty imposed on a defendant for wrongdoing nor is its purpose to deter wrongdoing.

In sum, we find no basis to distinguish liquidated damages in negligence actions from those in contract actions. The policy basis for awarding prejudgment interest on liquidated damages applies regardless of the characterization of the claim.

Given our decision it is unnecessary to decide whether appellants' claims are contractual claims rather than negligence claims.

The remaining question is whether appellants' claims are liquidated (or determinable), or unliquidated claims. This question depends upon the nature of the agreed damages for which Tucker and Tucker Co. stipulated to liability. Turning to the seven claims, we accept and agree with respondents' concessions that the *American Eagle* and *American Star* claim for return of premium, the *Ocean Cape* claim for amounts the owner paid to and for any further liability of the owner to the financing company, and the *Steel Fin* claim for the loss of the "insured agreed value" of the vessel are all liquidated claims.

We hold that the *Vestfjord*–hull and *Sea Comber* claims are also liquidated. The repairs in the *Vestfjord*–hull claim were adjusted by an average adjuster. The repairs to the *Sea Comber* were approved by a marine surveyor whom Tucker saw was appointed to report the loss to underwriters. In both of these claims evidence was available which furnished data making possible the computation of the cost of repairs with exactness and without reliance upon opinion or discretion. *See Prier v. Refrigeration Eng'g Co., supra* at 35. Thus, prejudgment interest is awardable on the total amount of the repairs paid for by the owner of the *Vestfjord,* and on the amount the owner of the *Sea Comber* paid out of pocket for repairs.

The owner of the *Sea Comber* is also entitled to recover the interest on the money he had to borrow to pay for

repairs, and to recover the interest charged on the unpaid repair bill. But for the damages, for which Tucker and Tucker Co. stipulated to liability, the owner would not have incurred these expenses. They are recoverable as a separate element of his damages. *See King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974); *see also State Hwy. Comm'n v. Brasel & Sims Constr. Co.,* 688 P.2d 871 (Wyo. 1984).

The *Vestfjord*–Doty claim requires us to examine certain maritime law principles, since the injured crew member sought maintenance and cure. The purpose of "maintenance" is to provide the seaman with food and lodging. *Vaughan v. Atkinson,* 369 U.S. 527, 531, 8 L. Ed. 2d 88, 82 S. Ct. 997, *reh'g denied,* 370 U.S. 965, 8 L. Ed. 2d 834, 82 S. Ct. 1578 (1962). "Cure" is medical care. *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 528, 82 L. Ed. 993, 58 S. Ct. 651 (1938); 1 P. Edelman, *Maritime Injury and Death* 8 (1960). It is the duty of a vessel to provide maintenance and cure to a seaman who falls ill or is injured while in the service of the ship. *The Osceola,* 189 U.S. 158, 175, 47 L. Ed. 760, 23 S. Ct. 483 (1903). As with other seamen, a commercial fisherman is entitled to maintenance and cure until the maximum degree of cure is obtained. 2 M. Norris, *Seamen* § 26:44, at 121 (4th ed. 1985).

Whether amounts claimed for maintenance and cure are liquidated depends upon how these amounts are determined. While maintenance was long established at the rate of $8 per day, G. Gilmore & C. Black, *Admiralty* 307 (1975), some courts have recently awarded higher "standard" amounts. *See, e.g., Robinson v. Plimsoll Marine, Inc.,* 460 F. Supp. 949 (E.D. La. 1978) ($15 per day). More recently, there appears to be a trend away from any "standard" rate, and toward maintenance awards determined by the court in its exercise of discretion. *See generally* 2 M. Norris, *supra,* § 26:70. (The awards are often expressed as per diem amounts.) In one case, for example, where the United States District Court for Western Washington found the amount claimed by the seaman to be unreasonable, the court in its discretion concluded that $14

per day was a reasonable amount. *In re Robbins,* 575 F. Supp. 584 (W.D. Wash. 1983).

In light of this apparent trend in maritime law, we are unprepared to say that all claims for maintenance are liquidated claims. Also, from the record before us, we cannot determine in this particular case whether the amount paid was liquidated. Therefore, we decline to hold that the maintenance claim is liquidated.

We further decline to hold that cure is liquidated. "The seaman's recovery must . . . be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled . . ." *Calmar S.S. Corp. v. Taylor, supra* at 531. It is not enough that the medical bills be paid, the amounts must be reasonable. *Cf. Hutteball v. Montgomery,* 187 Wash. 516, 60 P.2d 679 (1936) (in an action to recover for personal injuries and loss of personal property, no recovery for medical expenses is allowed unless they are shown to be reasonable). Because reliance upon opinion and discretion is necessary in determining whether the amounts expended were reasonably necessary and reasonable in amount, medical expenses, here cure, are unliquidated. *See Prier,* at 32; *see also Lloyd v. American Can Co.,* 128 Wash. 298, 222 P. 876 (1924); *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 463 P.2d 225 (1969).

Clearly the settlement the *Vestfjord* owner paid and the costs of defending and settling the injured crew member's suit are unliquidated. These amounts are recoverable only if reasonable in amount.

■ Lastly, with regard to the *Vestfjord*–Doty claim, Inapro's agreement to the reasonableness of the settlement does not render the settlement amount liquidated. If it did, settlements would be discouraged by the possibility of exposure to prejudgment interest, contrary to policy favoring settlements. *Cf. Pearson Constr. Corp. v. Intertherm, Inc., supra* at 20 (a stipulation at trial as to damages does not relate back and render the damages liquidated when the cause of action arose; if it did, stipulating parties would be penalized by exposure to prejudgment interest, contrary

to policy favoring stipulations).

Finally, we turn to the *Sea Star* claim. As discussed above, we decline to decide that all amounts paid for maintenance represent liquidated claims or that cure is a liquidated claim. Here, the total amount paid by the vessel owners included the injured crew member's unearned wages. A seaman's unearned wages claim is based upon a seaman's right to payment of his wages to the end of the voyage for which he contracted (or to the end of a fishing season, depending upon his engagement), even though an injury or illness prevents his completion of it. *See* 1 P. Edelman, *supra* at 9; 2 M. Norris, *supra,* § 26:7; § 26:44, at 122. While perhaps such a claim might be liquidated (in that once the facts are decided the amount is readily ascertainable) we cannot so conclude here. All that is before us is an undifferentiated lump sum amount representing maintenance, cure, and unearned wages.

In sum, appellants in the *Vestfjord*–Doty claim and in the *Sea Star* claim have not proved that payments to the injured seamen are liquidated. Prejudgment interest is therefore not awardable in either case.

Affirmed insofar as the *Vestfjord*–Doty claim and the *Sea Star* claim are concerned; reversed as to the other claims and remanded for award of prejudgment interest in accord with the parties' stipulations to amounts of prejudgment interest up to the date of the settlement agreement. The trial court is directed to award further prejudgment interest from the date of the settlement agreement to the date of entry of judgment.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied March 9, 1987.